OPINION
{¶ 1} Defendant-appellant Charles T. Lodge appeals from his conviction and sentence for possession of heroin and possession of criminal tools. On October 31, 2003, Lodge was indicted for one count of possession of heroin, one count of trafficking in heroin,[1] and one count of possession of criminal tools. On November 6, 2003, Lodge entered a "not guilty" plea with respect to the charges against him. Prior to trial, the second count in the indictment for trafficking in heroin was dismissed by the State.
 {¶ 2} Following a jury trial on February 18 and 19, 2004, the jury returned a guilty verdict as to both remaining counts in the indictment on February 20, 2004. On February 26, 2004, Lodge filed a motion for a new trial, pro se. On April 2, 2004, the trial court sentenced Lodge to eleven months on count one of the indictment for possession of heroin. The trial court also sentenced Lodge to eleven months on the third count of the indictment for possession of criminal tools. The trial court ordered that the sentences be served consecutively, for an aggregate sentence of twenty-two months. Additionally, the trial court suspended Lodge's driver's license for six months and overruled his motion for a new trial.
 {¶ 3} In the instant appeal, Lodge submits two assignments of error for review by this Court. In his first assignment, Lodge contends that he received ineffective assistance of counsel at the trial level. In support of this contention, Lodge asserts that his trial counsel's performance was deficient for the following reasons: 1) failure to file a motion to suppress that would have tested the propriety of the initial detention and search of the vehicle which led to Lodge's arrest; 2) failure to request expert assistance in order to refute expert testimony regarding a polygraph examination administered to Lodge; 3) failure to object to hearsay testimony offered by the State during trial; and 4) failure to file a motion in limine with respect to certain evidence proffered by the State. After a thorough review of the record, we conclude that Lodge's trial counsel's performance does not rise to the level of ineffective assistance of counsel.
 {¶ 4} In his second assignment, Lodge contends that the trial court erred when it imposed an excessive sentence that was unsupported by evidence adduced at trial and contrary to statutory sentencing guidelines. In light of the reasoning provided by the trial court, we conclude that the aggregate twenty-two month sentence imposed was not an abuse of discretion under the circumstances in this case.
 {¶ 5} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 6} On October 21, 2003, Lodge was traveling as a passenger in a vehicle owned and operated by Heather G. Ferguson. Ferguson was taking Lodge to a doctor's appointment at the Dayton Wellness Center on Wilmington Avenue in Dayton, Ohio. After arriving at the doctor's office, Ferguson waited in her vehicle while Lodge went inside.
 {¶ 7} After the doctor's appointment was concluded, Ferguson testified that she and Lodge traveled to West Dayton so that Lodge could make a heroin purchase. Although Ferguson testified that she was present when the drug purchase was conducted, she stated that she remained in the vehicle while Lodge completed the transaction. Ferguson testified that from her vantage point, she could see the person from whom Lodge was ostensibly purchasing the narcotics, but that, because of their positioning, she did not observe any drugs or money change hands.
 {¶ 8} After the purchase was completed, Ferguson testified that she and Lodge ingested some of the recently purchased heroin and then traveled to Lodge's mother's house in Cedarville, Ohio. Ferguson stated that the two ate dinner there, and left shortly thereafter to return to Lodge's residence in Xenia, Ohio.
 {¶ 9} While Lodge and Ferguson were returning to Xenia, local authorities had allegedly received a tip from the niece of Jeffrey Ferguson that a motor vehicle matching the description of Heather Ferguson's vehicle would be returning from Dayton transporting narcotics. Detective Jeff Osbourn, a member of the Xenia Police who is assigned to the ACE task force, contacted a dispatch officer and requested that the vehicle be stopped and its passengers be detained upon observance of a reasonable traffic violation by area police.
 {¶ 10} After spotting Ferguson's vehicle and observing her fail to signal a turn, Officer Steve Shaw of the Xenia Police initiated a stop and contacted Detective Osbourn who arrived at the scene within a few moments. Before he arrived, however, Officer Shaw spoke with Ferguson and determined that her driver's license had been suspended. Upon his arrival, Detective Osbourn removed Ferguson from her vehicle and placed her in the back of Officer Shaw's cruiser. At the detective's request, Ferguson signed a written statement and gave her consent for the police to search her vehicle for contraband. The record indicates that Ferguson disclosed the nature and general location of the heroin in the vehicle. Ferguson testified that she told Detective Osbourn that the heroin belonged to Lodge and that he kept it in a hollowed-out magic marker.
 {¶ 11} The facts establish her familiarity with Lodge's drug use because Ferguson, an admitted heroin addict, had been living with Lodge at his residence since her husband, Jeffrey Ferguson, was incarcerated because he had tested positive for heroin while on probation. Ferguson testified that while she lived with Lodge, she was unemployed and had no means of financial support. She also testified that she and Lodge used heroin together frequently while she was staying in his home.
 {¶ 12} After searching the vehicle, the authorities discovered the hollowed-out marker containing nine capsules of heroin, or approximately .35 grams of the narcotic. Lodge was subsequently taken into custody, charged, and ultimately convicted of possession of heroin and possession of criminal tools.
 {¶ 13} From his conviction and sentence, Lodge appeals.
 II {¶ 14} Lodge's fist assignment of error is as follows:
 {¶ 15} "Appellant was denied his constitutionally protected right to effective assistance of counsel under the fifth, sixth, andfourteenth amendments to the United States constitution, as well as comparable portions of the Ohio constitution."
 {¶ 16} In his first assignment of error, Lodge contends that he received ineffective assistance of counsel at the trial level. In support of this assertion, Lodge cites the following arguments: 1) failure to file a motion to suppress that would have tested the propriety of the initial detention and search of the vehicle which led to Lodge's arrest; 2) failure to request expert assistance in order to refute expert testimony regarding a polygraph examination administered to Lodge; 3) failure to object to hearsay testimony offered by the State during trial; and 4) failure to file a motion in limine with respect to certain evidence proffered by the State.
 {¶ 17} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant'sSixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Statev. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citing State v.Lytle (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 18} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 19} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra, at 694.
 {¶ 20} The arguments Lodge submitted with respect to his claim for ineffective assistance of counsel will be discussed in the sequence presented in his brief.
a. FAILURE TO FILE A MOTION TO SUPPRESS
 {¶ 21} Initially, Lodge argues that defense counsel provided ineffective assistance of counsel for failing to file a motion to suppress to challenge the detention and search of Ferguson's vehicle. Lodge is correct in asserting that he would have standing to challenge the search of the vehicle under State v. Carter (1994), 69 Ohio St.3d 57,63, 630 N.E.2d 355, because he was a passenger in the vehicle when it was stopped and detained by the police. His detention along with that of the vehicle constitutes a seizure for the purposes of the Fourth Amendment.Id.
 {¶ 22} Lodge asserts that the while the police were justified in stopping the vehicle for failure to signal a turn, any further detention and search of the vehicle and its occupants was unwarranted in light of the unreliability of the tip provided by Jeffrey Ferguson's niece, Gina. Lodge contends that the defense counsel's performance was rendered ineffective by his failure to file a suppression motion that attacked not the initial stop, but rather the continued detainment and search of the vehicle which yielded the contraband.
 {¶ 23} When the information possessed by the police before a stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip, and highly relevant factors are the informant's veracity, reliability, and basis of knowledge. State v. Kemp (April 26, 2002), Montgomery App. No. 19099, 2002-Ohio 2059. As a starting point to determine the reliability of an informant's tip, the class of informant should be identified as being in one of three classes of informants: 1) anonymous informants, who are generally unreliable and require independent police corroboration; 2) known informants, namely persons from a criminal background who have provided previously reliable tips; and 3) identified citizen informants, who have personally observed criminal conduct and are presumed to be reliable. Id.
 {¶ 24} Detective Osbourn testified that on October 21, 2003, he received a tip in the form of a phone call from Jeffrey Ferguson's niece in which she stated that a maroon Jimmy with a temporary license plate was returning from Dayton carrying heroin. Detective Osbourn also testified that the informant stated that Heather Ferguson would be driving the vehicle while Lodge was a passenger. In light of this information and the fact that Detective Osbourn testified that he knew Heather Ferguson drove a maroon Jimmy through prior contacts with her husband, he notified local authorities in Xenia to be on the lookout for said vehicle, and to initiate a stop upon observance of a reasonable traffic violation.
 {¶ 25} An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Florida v.Royer (1983), 460 U.S. 91, 500, 103 S.Ct. 1319. In order to warrant a brief investigatory stop, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. State v.Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831. We conclude that based on the tip provided by Jeffrey Ferguson's niece and Detective Osbourn's prior knowledge of the maroon Jimmy, the police were justified in stopping the vehicle and detaining Heather Ferguson and Lodge.
 {¶ 26} Moreover, once Detective Osbourn arrived, he spoke with Heather Ferguson and she signed a valid consent form to search her vehicle. After searching through the admittedly cluttered vehicle for some time, the police located the heroin that had originally been brought to their attention through the tip from Jeffrey Ferguson's niece. The Xenia authorities clearly acted reasonably in relying on the information provided by the informant. Thus, there is a strong indication that had a motion to suppress been filed in the instant case, it would have been overruled.
 {¶ 27} "Failure to file a motion to suppress does not constitute per se ineffective assistance of counsel." State v. Madrigal (2000),87 Ohio St.3d 378, 389, 721 N.E.2d 52 (citation omitted). Given the strong presumption that counsel's performance constituted reasonable assistance, Lodge's counsel was not required to perform a futile act. Moreover, Lodge has failed to demonstrate that there is a reasonable probability that but for his counsel's failure to file the suppression motion, the result of the case would have been different.
B. FAILURE TO REQUEST EXPERT ASSISTANCE
 {¶ 28} Lodge next argues that he was provided ineffective assistance in light of his counsel's failure to enlist the services of an expert to rebut the findings of the polygraph expert who testified for the State. In particular, Lodge contends that in the absence of expert testimony with respect to problems with the reliability of polygraph examinations, the jury could have been led to believe that polygraph examinations are infallible. We disagree.
 {¶ 29} In State v. Souel (1978), 53 Ohio St.2d 123, the Supreme Court set forth several conditions which must be followed in order to make the results of a polygraph test admissible in a criminal trial for purposes of corroboration or impeachment:
 {¶ 30} "1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graph's and the examiner's opinion thereon on behalf of either defendant or the state.
 {¶ 31} "2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
 {¶ 32} "3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:
 {¶ 33} "(a) the examiner's qualifications and training;
 {¶ 34} "(b) the conditions under which the test was administered;
 {¶ 35} "(c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and,
 {¶ 36} "(d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.
 {¶ 37} "(4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given."
 {¶ 38} While the preceding set of guidelines was designed to determine the admissibility of polygraph test results in a criminal trial, we find that these rules are also instructive with respect to whether counsel has failed to properly defend his client. In the instant case, the trial court, as well as both parties, adhered to the guidelines set forth by the Supreme Court in Souel, supra.
 {¶ 39} On January 9, 2004, Lodge, defense counsel, and the State signed a stipulation which stated that Lodge agreed to submit to the polygraph test and that the results of the test would be admitted at trial unless the results were inconclusive concerning Lodge's veracity. Further, Lodge's counsel was given the opportunity, which he utilized vigorously, to cross-examine the polygraph technician, Cindy Erwin, who administered the exam to Lodge. Lastly, the trial court provided the jury with a limiting instruction with respect to the weight that should be afforded the results of the polygraph examination. Every protocol designed to insure the efficacy of the polygraph examination mandated under Souel was followed.
 {¶ 40} Using Strickland as our guide, it is clear that defense counsel's decision not to request the assistance of a polygraph expert was tactical in nature, and thus, did not constitute ineffective assistance of counsel. Other than pure conjecture, Lodge fails to demonstrate what, if any, effect a polygraph expert would have had on the outcome of the trial. In any event, Lodge has failed to demonstrate that there is a reasonable probability that but for defense counsel's actions, the result of the trial would have been different.
C. FAILURE TO OBJECT TO HEARSAY TESTIMONY
 {¶ 41} In this section, Lodge contends that defense counsel's performance was rendered deficient by his failure to object to hearsay testimony offered by certain of the State's witnesses with respect to the hollowed-out magic marker in which Lodge allegedly hid the heroin. Specifically, Lodge asserts that two of the police officers who were involved in searching Ferguson's vehicle relied on a tip from a unknown source who was not identified at trial that Lodge "kept heroin in a black tubular-type thing that they described as what they thought was a small flashlight." Lodge argues that his counsel's failure to object to this testimony was prejudicial as it unfairly connected him with the heroin located in the vehicle. We disagree.
 {¶ 42} Although the testimony of the officers with respect to where they received the information concerning the marker containing heroin was clearly hearsay and in violation of Evid.R. 802, we must find that any error associated with the hearsay testimony was harmless error beyond a reasonable doubt in light of other direct testimony adduced at trial which implicates Lodge. In particular, Heather Ferguson testified in the following exchange:
 {¶ 43} "Q: Okay. Did you provide Detective Osbourn or any of the officers that were there information about drugs?
 {¶ 44} "A: Yes, I did.
 {¶ 45} "Q: In the car, what did you tell Detective Osbourn or any other officer who was there that day?
 {¶ 46} "A: I told them that the drugs were in a black magic marker.
 {¶ 47} "Q: How do you know they were in the black magic marker?
 {¶ 48} "A: Because that is where Chuck (Lodge) always kept it.
 {¶ 49} "Q: Where Chuck always kept what?
 {¶ 50} "A: The heroin.
 {¶ 51} "Q: The heroin. Did you see him — did you see that black magic marker in the truck or Jimmy that day.
 {¶ 52} "A: Yes, I did." (Emphasis added)
 {¶ 53} In light of Ferguson's testimony concerning the marker, trial counsel's failure to object to the hearsay testimony of the police officers, while an omission, does not rise to the level of ineffective assistance of counsel. Lodge has failed to demonstrate to a reasonable probability that were it not for counsel's error in failing to object, the outcome of the trial would have been different.
 {¶ 54} Failure to investigate, prepare, object to evidence, or file a motion in limine to preclude the admission of prejudicial evidence
 {¶ 55} Lodge's final argument with respect to his assignment of ineffective assistance of counsel is that his trial counsel failed to take actions that would preclude the admission of certain prejudicial evidence, namely a blue pen that allegedly fell out of Lodge's pocket before being taken into police at the scene of the traffic stop. The pen was found to have contained a powder residue, however, the laboratory was unable to determine the nature of the substance. Lodge contends that trial counsel should have more thoroughly investigated the information available on the blue pen and filed a motion in limine to prevent the introduction of that evidence at trial.
 {¶ 56} The State attempted to present evidence with respect to the blue pen during trial, but at the conclusion of the State's case-in-chief, defense counsel objected to the admission of the pen into evidence. The trial court decided to exclude the pen on the basis of relevancy and because the residue allegedly found inside the pen was unidentifiable. As a result, the blue pen was not admitted into evidence, and the State did not mention the pen in its closing argument.
 {¶ 57} Because the pen was ultimately excluded from evidence by the trial court in response to an objection from defense counsel, we fail to see how Lodge can establish that he was provided ineffective assistance of counsel in this regard. Lodge speculates that the pen's brief introduction into evidence at trial "could have been improperly used [by the jury] to convict appellant of possession of criminal tools."
 {¶ 58} "It is not enough for the defendant to assert that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet the test." United States v.Valenzuela-Bernal (1982), 458 U.S. 858, 866-867, 102 S.Ct. 3440, 3446. Mere speculation, however, is insufficient to demonstrate that Lodge was prejudiced by his counsel's decision not to file a motion in limine with respect to the pen. It was defense counsel's proper objection during trial that resulted in the irrelevant evidence being excluded from the jury's consideration. Thus, Lodge is unable to overcome the "strong presumption" that defense counsel's performance constituted reasonable assistance. Many times, a proper course of action is more readily discernable in hindsight. In this instance, we will not attempt to second guess defense counsel's decision with respect to the pen. Counsel's omission does not rise to the level of ineffective assistance.
 {¶ 59} Lodge's first assignment of error is overruled.
 III {¶ 60} Lodge's second Assignment of Error is as follows:
 {¶ 61} "The trial court erred in imposing a sentence that was excessive and contrary to law and unsupported by the record."
 {¶ 62} In the second assignment of error, Lodge contends that his sentence is contrary to law and unsupported by the record. Lodge maintains that the trial court's imposition of consecutive sentences was excessive and violative of the presumption that minimum sentences are favored for first-time imprisonment. We find Lodge's argument to be unpersuasive.
 {¶ 63} Under R.C. § 2953.08(G)(2), our standard of review on appeal is not whether the sentencing court abused its discretion. State v. Lofton
(Jan. 16, 2004), Montgomery App. No. 19852, 2004-Ohio-169. Rather, an appellate court may increase, reduce, or otherwise modify a sentence that is appealed, or vacate the sentence and remand the matter for resentencing if we find clear and convincing evidence that: 1) the record does not support the sentencing court's findings under the relevant statute [R.C. § 2929.14(E)(4), in this case]; or 2) that the sentence is otherwise contrary to law. State v. Furrow (Sep. 24, 2004) Montgomery App. No. 03CA19, 2004-Ohio-5272, citing State v. Culp (May 25, 2001), Champaign App. No. 00CA17.
 {¶ 64} In determining whether a sentence is "contrary to law," we have defined that term as meaning "that a sentencing decision manifestly ignores an issue or factor which a statute requires a court to consider." Griffen and Katz, Ohio Felony Sentencing Law (2002 Ed.), § T 9.7. "Where a sentencing court fails to make findings required in R.C. §§ 2929.13 or2929.14, fails to engage in the seriousness and recidivism analysis required under R.C. § 2929.12, or fails to set forth reasons when reasons are required in R.C. § 2929.19, the sentence is contrary to law." Id. At 779, citing State v. Edmondson (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.
 {¶ 65} With respect to consecutive sentences, we stated in State v.Peck (Nov. 19, 2004), Montgomery App. No. 03CA30, 2004-Ohio 6231, that "the trial court is permitted by R.C. § 2929.14(E)(4) to order consecutive sentences only after certain findings are made. By requiring the court to then state the reasons for those findings, R.C. §2929.19(B)(2)(c) obliges the court to not only have reasons but also to state what those reasons are. Further, in stating its reasons, the court must connect those reasons to the finding which the reason supports. Thecourt cannot merely pronounce causes that may objectively be itsreasons. The court must also identify which of those causes are theparticular reasons for each of the statutory findings the court made."Id., citing State v. Rothgeb (Jan. 31, 2003) Champaign App. No. 02CA7, 2003-Ohio-465. When a court decides to sentence a defendant to consecutive sentences, it is required to make its statutorily enumerated findings and provide the underlying reasons supporting those findings at a sentencing hearing. State v. Comer (2003), 99 Ohio St.3d 463,793 N.E.2d 473, 2003-Ohio-4165.
 {¶ 66} At Lodge's sentencing hearing on April 2, 2004, the trial court stated its findings in accordance with the statutory requirements outlined above. Initially, the court stated that in determining the sentence to be imposed, it considered the record, oral statements, any victim impact statements, and presentence reports. The court also noted that it considered the principles and purposes of sentencing under R.C. §§ 2929.11 and 2929.12. The court further stated that it reviewed R.C. §2929.13(B), but did not find one of the listed factors.
 {¶ 67} In imposing consecutive sentences, the court made the following findings under R.C. § 2929.14(E)(4):
 {¶ 68} "1) the appellant refused to accept responsibility for his actions, and posed a high likelihood for recidivism.
 {¶ 69} "2) appellant had prior conviction for a similar offense.
 {¶ 70} "3) the criminal tool (hollowed-out magic marker) used by appellant was specifically designed to conceal contraband, further demonstrating criminal intent.
 {¶ 71} "4) consecutive sentences were necessary to protect the public from future crime or to punish appellant.
 {¶ 72} "5) the sentence was not disproportionate to the seriousness of appellant's conduct and the danger he posed to the public.
 {¶ 73} "6) the harm caused by appellant was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of appellant's conduct."
 {¶ 74} The court also stated that it found that a Community Control sanction was inconsistent with the purposes of sentencing under R.C. §2929.11. Lastly, the court found that pursuant to R.C. § 2929.14(B), the shortest prison term would demean the seriousness of appellant's conduct and would be inadequate to protect the public from future crime committed by appellant.
 {¶ 75} After reviewing the record, we find that the sentence imposed by the trial court is neither contrary to law nor excessive as Lodge contends. The trial court set forth its findings in accordance with the statutory requirements at a proper sentencing hearing. The court clearly outlined its findings and reasons which support consecutive sentences.
 {¶ 76} Lodge's second assignment of error is overruled.
 IV {¶ 77} Both of Lodge's assignments of error having been overruled, the judgment of the trial court is affirmed.
Wolff, J. and Fain, J., concur.
[1] Appellant's and appellee's briefs mistakenly list the second count of the indictment against Lodge as trafficking in marijuana. The indictment filed on October 31, 2003, actually lists the second count in the indictment as trafficking in heroin.