JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Patrick Burns appeals from his conviction for drug possession. For the reasons set forth below, we affirm.
 {¶ 2} On January 14, 2005, defendant was indicted for one count of drug possession. He pled not guilty and the matter proceeded to a jury trial on April 6, 2005. For its case-in-chief, the state presented the testimony of Daniel Griffin, Patrick Foye and Amilo Leanza.
 {¶ 3} Daniel Griffin testified that on October 25, 2004, while exiting the rapid transit at West 117th Street in Lakewood, he noticed his friend, Sarrah Brown. Brown boarded the same bus as Griffin. She appeared "tipsy" and fell asleep several times and Griffin helped her to her home. Defendant subsequently confronted them and asked Brown, "Who the fuck is this?"
 {¶ 4} Defendant told Griffin to leave or something bad would happen. Defendant asked Brown if she had his money then told her to start walking.
 {¶ 5} Griffin asked someone to call the police then waited for them to arrive. When the police arrived, Griffin identified the house where defendant and Brown had gone. Shouting emanated from the home and the police entered. Griffin observed the police remove small items from defendant's pockets.
 {¶ 6} Lakewood Police Officer Patrick Foye testified that he responded to the call and learned that Griffin was concerned about Brown. Foye and a second officer approached the home where she and defendant had gone and heard a female scream, "Help me, get off me."
 {¶ 7} The officers found them in Brown's home in a room which appeared to be in disarray. The officers separated defendant and Brown and defendant explained that Brown had been trying to hurt herself. Brown reported that they had argued because she was with Griffin. She stated that she did not really intend to harm herself, but just wanted defendant's attention.
 {¶ 8} Foye observed needle marks on Brown's arm and called an ambulance. Defendant asked to be let back into the house to retrieve keys. He was gone for an extended period of time, however, and when he returned, he was sweating profusely. Foye suspected that defendant had taken drugs. Before permitting defendant to accompany Brown to the hospital in the ambulance, Foye asked if defendant had any contraband. Defendant reached toward his pocket and Foye then removed two bags of suspected heroin from defendant's pocket.
 {¶ 9} Foye further testified that defendant claimed that the drugs were not his and that they belonged to Brown. The police also recovered what appeared to be a urine sample and defendant indicated that he intended to use the substance in order to pass a drug test ordered by his employer.
 {¶ 10} Foye admitted on cross-examination that he later discovered six empty bags of suspected heroin in clothing Brown had worn to the hospital.
 {¶ 11} Lakewood Police Officer Amilio Leanza testified that he received two opened packets and two sealed packets of heroin and a vial of what appeared to be urine from defendant. Defendant indicated that the drugs belonged to Brown and that he needed the other substance in order to pass a drug test.
 {¶ 12} Defendant and the state stipulated that the two bags did in fact contain heroin and weighed a total of .15 grams.
 {¶ 13} Defendant elected to present evidence and offered the testimony of Sarrah Brown and Lakewood Police Officer Todd Allen.
 {¶ 14} Brown testified that she exited the bus at Cook and Detroit. Griffin approached and asked if she was okay and walked with her. Her boyfriend, defendant, arrived and she and defendant then went to her house.
 {¶ 15} Brown stated that she was under the influence of heroin, and that she had purchased ten bags and used six of them. She further stated that the bags of heroin recovered in this matter were actually hers.
 {¶ 16} Brown claimed that she became upset and wanted to commit suicide. The police entered the home and took her to Lakewood Hospital. She was later transferred to a Psychiatric Unit at Chagrin Falls Hospital then to a residential drug treatment facility. She later contacted Det. Allen of the Lakewood Police Department and informed him that the drugs recovered in this matter were hers.
 {¶ 17} Brown admitted that she lives with defendant. She denied telling police at the scene that she and defendant were fighting over the remainder of the heroin but she acknowledged that his money was used to purchase the drugs. She stated that she has never seen defendant use drugs.
 {¶ 18} Officer Allen testified that during the course of his investigation, he did not question Brown about whether the drugs were in fact hers.
 {¶ 19} On rebuttal, the state presented the testimony of Lakewood Police Det. Daniel Rusnak. Rusnak testified that he also responded to Brown's home in connection with this matter. According to Rusnak, while he was at the hospital with Brown, Brown stated that she and defendant had fought over who would use the remainder of the heroin.
 {¶ 20} Defendant was subsequently convicted of drug possession and sentenced to one year of community control sanctions. Defendant now appeals and assigns three errors for our review.
 {¶ 21} Defendant's first assignment of error states:
 {¶ 22} "The trial court erred in denying Appellant's Criminal Rule 29 motion for acquittal where there was insufficient evidence to prove the elements of possession of a controlled substance."
 {¶ 23} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. A Crim.R. 29(A) motion for acquittal "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394; State v. Jordan, Cuyahoga App. Nos. 79469 and 79470, 2002-Ohio-590.
 {¶ 24} The standard for a Rule 29 motion is virtually identical to that employed in testing the sufficiency of the evidence. State v. Turner, Franklin App. No. 04AP-364,2004-Ohio-6609, citing State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins,
supra.
 {¶ 25} R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 26} R.C. 2901.21 states that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C.2901.21(D)(1).
 {¶ 27} The state need not prove "ownership" in order for a conviction for possession of drugs to be sustainable. State v.Tell, Cuyahoga App. No. 84790, 2005-Ohio-1178. That is, a person may possess or control property belonging to another. State v.Mann (1993), 93 Ohio App.3d 301, 308, 638 N.E.2d 585.
 {¶ 28} In this matter, the state's evidence indicated that Brown appeared to be under the influence of a drug or alcohol, that defendant then confronted her, that she screamed for help, and that defendant went back into Brown's house after Brown was placed in the ambulance. The state's evidence further indicated that defendant was gone for an extended time and when he returned, he was sweating profusely and Officer Foye was concerned that he had taken drugs. Finally, the evidence indicated that defendant reached into his pocket when asked if he had contraband, and police recovered packets of heroin and a vial of liquid which defendant stated was to be used to pass a drug test requested by his employer. From the foregoing, we conclude that the trial court properly denied the motion for acquittal as reasonable minds could reach different conclusions as to whether defendant knowingly possessed heroin.
 {¶ 29} This assignment of error is without merit.
 {¶ 30} Defendant's second assignment of error states:
 {¶ 31} "The Appellant's conviction was against the manifest weight of the evidence."
 {¶ 32} Defendant next asserts that his conviction is unsupported by the manifest weight of the evidence.
 {¶ 33} In State v. Thompkins, supra, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 34} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 {¶ 35} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
 {¶ 36} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 37} In this matter, we cannot conclude that the jury lost its way in convicting defendant of possession of the heroin. Although defendant maintained that the drugs were Brown's, the state's evidence outlined that Brown was under the influence of a drug or alcohol, that defendant fought with her and that Brown screamed, "Help me, get off me." In addition, the state's evidence indicated that defendant returned to Brown's house after she was placed in the ambulance and that the arresting officers subsequently noted that he was sweating profusely before finding the drugs and a vial of liquid on defendant's person. We conclude that the verdict is supported by the manifest weight of the evidence and that the jury acted within its prerogative in convicting defendant of drug possession.
 {¶ 38} This assignment of error is overruled.
 {¶ 39} Defendant's third assignment of error states:
 {¶ 40} "Appellant was denied effective assistance of counsel and a fair trial as counsel's legal service fell below the standard of reasonable representation."
 {¶ 41} Defendant asserts that his trial counsel was ineffective for failing to seek suppression of the heroin.
 {¶ 42} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing Strickland v. Washington,
supra at 687-688.
 {¶ 43} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Stricklandv. Washington, supra, at 686. The failure to prove any one prong of the Strickland two-part test makes it unnecessary for a court to consider the other prong. State v. Madrigal, supra, at 389, citing Strickland v. Washington, supra, at 697.
 {¶ 44} A debatable decision involving trial tactics generally does not constitute a deprivation of effective counsel. State v.Phillips (1995), 74 Ohio St.3d 72, 656 N.E.2d 643,1995-Ohio-171. In State v. Clayton (1980), 62 Ohio St.2d 45,402 N.E.2d 1189, the Ohio Supreme Court discussed an attorney's choice of trial strategy and stated the following:
 {¶ 45} "* * * the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client."
 {¶ 46} Finally, we note that the Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case. State v. Flors (1987),38 Ohio App.3d 133, 528 N.E.2d 950, citing Kimmelman v. Morrison
(1986), 477 U.S. 365, 91 L.Ed.2d 305, 106 S. Ct. 2574. The burden is on the defendant-appellant to point to evidence in the record supporting suppression of evidence. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." Statev. Gibson (1980), 69 Ohio App.2d 91, 95, 430 N.E.2d 954. Moreover, counsel is not required to perform a futile act. Statev. Martin (1983), 20 Ohio App.3d 172, 174, 485 N.E.2d 717;State v. Lodge, Greene App. No. 2004 CA 43, 2005-Ohio-1908;State v. Davis, Butler App. No. CA2001-05-108, 2002-Ohio-865.
 {¶ 47} To justify a pat-down under Terry, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.
 {¶ 48} In this matter, Foye observed track marks on Brown's arms. He then noted that defendant asked to go back into the house as Brown was about to be transported to the hospital, that he was gone for an extended period of time and was sweating profusely. The officer was concerned that defendant had used drugs and did not want defendant to enter the ambulance with "something dangerous." Accordingly, the record supports the conclusion that Officer Foye had reasonable suspicion in asking about contraband and in taking the items after defendant reached into his pocket. Cf. State v. Clancy (Feb. 8, 1996), Cuyahoga App. No. 66902. Accordingly, a motion to suppress evidence would have been unavailing.
 {¶ 49} The third assignment of error is without merit. Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., concurs.
 Colleen Conway Cooney, Dissents (see attached dissentingopinion)