JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Prince Logan, Sr. ("appellant"), appeals from his conviction for felonious assault. For the reasons set forth below, we affirm.
 {¶ 2} On May 26, 2005, the Cuyahoga County Grand Jury indicted appellant on one count of felonious assault, in violation of R.C.2903.11. Appellant pleaded not guilty to the indictment.
 {¶ 3} The jury of this matter commenced on May 23, 2006. At trial, the state *Page 3 
presented the following individuals for examination: Jasmine Simmons; Detective David Santiago; Officer Albert Eggelmeyer; and James Keifer. A summary of the relevant testimony follows.
 {¶ 4} On or about May 20, 2005 around 2:30 a.m., the victim, Jasmine Simmons (the "victim"), stopped her vehicle at a traffic light on Detroit Road in Cleveland, Ohio, when she was rear-ended by a male driving a gold Volvo. She described the male as African-American, over six foot tall, slender, but stocky build. She later identified the male as appellant.
 {¶ 5} The victim testified that, after the impact, she took appellant's information from his identification card as well as his license plate number. The victim also asked to see appellant's driver's license and insurance card. Appellant denied her request in this regard, and instead, announced he was leaving.
 {¶ 6} While the victim remained standing in front of appellant's vehicle, appellant drove towards the victim and struck her with his vehicle. The victim admitted the impact was not great, but was enough to push her back so that she ended up on the hood of the car. At that point, the vehicle slowed down, the victim got off the vehicle, and appellant drove away.
 {¶ 7} Immediately thereafter, the victim got in her vehicle and followed appellant. When appellant stopped again, she noticed that the vehicle had one temporary tag as well as a regular license plate. She wrote down the information from both plates. She did not confront appellant at this time, and instead, chose to go to the police station. *Page 4 
 {¶ 8} While at the police station, she informed Officer Albert Eggelmeyer of the incident. Additionally, she provided the officer with appellant's name, address, two license plate numbers, and the type and color of the vehicle. Also, she described appellant's appearance.
 {¶ 9} After making the police report, the victim went to the hospital where she was treated and released.
 {¶ 10} Detective Santiago was assigned to investigate the victim's allegations. First, he contacted the victim who agreed to meet with him on April 6, 2005. On that occasion, the victim immediately identified appellant in a photo array as the individual that struck her with his vehicle. The victim testified that there was no doubt in her mind that the man she picked in the photo array was the perpetrator of this crime. Additionally, the victim provided Detective Santiago with her statement. Finally, Detective Santiago took pictures of the victim's vehicle that was involved in the automobile collision. The pictures indicated a dent on the right side of the bumper that the victim testified was not present prior to the collision.
 {¶ 11} After interviewing the victim, Detective Santiago telephoned appellant on April 11, 2005 and left a message regarding the incident that occurred on May 20, 2005. Appellant returned the detective's call the next day and told Detective Santiago that he had already talked to detectives and informed them that someone had broken into his home and stole his ID card.
 {¶ 12} Later that day, Detective Santiago went to appellant's home looking for the gold Volvo. As he was approaching appellant's home, he saw a gold Volvo *Page 5 
matching the description given by the victim parked in a garage which had no doors. The detective took pictures of the vehicle. As he was doing so, he noticed that the vehicle had both a temporary tag and a regular license plate, the numbers of which matched those given by the victim. Finally, the detective took pictures of the front of the vehicle, which showed damage to the front in the form of scuff marks and the front amber color lens was missing.
 {¶ 13} Detective Santiago testified that he also investigated appellant's claim that his wallet was stolen from his home. He discovered that appellant did not make a report regarding the stolen wallet until September 25, 2005, more than five months after the collision. According to the report filed by appellant, the home was burglarized sometime between September 20, 2005 and September 25, 2005.
 {¶ 14} At the close of the state's case, appellant moved for a Crim.R. 29 motion for acquittal. The trial court denied appellant's motion and he proceeded to present his case.
 {¶ 15} First to testify on behalf of appellant was Leon Harding. He testified that he has known appellant for 25 years. He explained that the two had previously been romantically involved, but currently are not, and were not at the time of this incident.
 {¶ 16} Harding testified that he arrived at appellant's home on March 19, 2005 at 8:30 p.m. and remained there until late the following afternoon. Harding explained that appellant threw a card party at his home from 11:00 p.m. until 4:00 a.m. the following morning. Harding stated that appellant was at his home for the entire card *Page 6 
party. Harding further testified that a gold Volvo was parked in the garage at the Logan residence on that occasion, but that appellant never drove the Volvo. Instead, appellant drove a blue Ford F-150 truck. Dodia, Mayberry and Angelique Hobson confirmed Harding's testimony regarding the card party, appellant's presence during the party, the location of the gold Volvo, and that appellant drove a blue Ford F-150 truck.
 {¶ 17} Finally, appellant testified on his own behalf. First, he maintained that he lost his wallet on March 19, 2005 sometime during his visit to a local Denny's. Appellant claimed that the following items were in his wallet when it was lost: his social security card, two credit cards, an entry key for work, a copy of his auto insurance, his registration, his state ID, his medical card and medical history of his medication. He became aware he lost his wallet the following Monday, at which time he contacted his bank to report his lost card. In regards to the collision that occurred during the early hours of March 20, 2005, appellant testified that he arrived at his house on March 19, 2005 around 6:00 p.m. and did not leave the premises until Monday morning, two days later. He explained that people were over his house playing cards from about 10:00 p.m. on March 19, 2005 until about 4:00 a.m. on March 20, 2005. He further testified that he never left his house during that time.
 {¶ 18} Appellant admitted that he owned a 1989 gold Volvo at the time of the incident, but maintained that the Volvo was in his garage the entire night. He claimed that he never drove the vehicle, and instead intended to sell the vehicle's parts. He admitted, however, to registering the vehicle and obtaining automobile *Page 7 
insurance for the vehicle.
 {¶ 19} Throughout his testimony, appellant referred to an automobile accident that occurred in 2000. He explained the injuries he suffered as a result of that accident. Upon cross-examination, he further explained how the accident occurred and testified that he received a DUI violation as a result of the accident.
 {¶ 20} After appellant testified, the defense rested its case. The court then presented the case to the jury for deliberations. The next day, on May 25, 2006, the jury found appellant guilty of felonious assault. After a hearing on July 11, 2006, the trial court sentenced appellant to two years in prison.
 {¶ 21} Appellant now appeals his conviction and submits three assignments of error for our review. Appellant's first assignment of error states:
 {¶ 22} "The Jury's Verdict Finding Appellant Guilty Was Against The Manifest Weight Of Evidence In Violation Of The Due Process Clause Of the United States Constitution and Article I, Section 16 Of The Ohio Constitution."
 {¶ 23} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 24} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established *Page 8 
before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 25} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211,72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. SeeState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 26} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 27} Within this assignment of error, appellant argues that his conviction was against the manifest weight of the evidence because the state failed to present credible evidence that appellant knowingly attempted to cause physical harm to the victim with his automobile. Instead, appellant argues the evidence establishes that he was simply trying to evade the victim after accidentally colliding with her vehicle. We disagree.
 {¶ 28} The victim testified that appellant abruptly announced he was leaving and entered his vehicle after she asked to see a driver's license and proof of *Page 9 
insurance. She stated that she was standing in front of appellant's vehicle when he drove towards her, striking her and pushing her back on feet. As a result of the force, she ended up sprawled across the top of his vehicle. The victim's testimony establishes that appellant drove directly towards her and not that he was attempting to evade her with his vehicle.
 {¶ 29} Furthermore, appellant did not present any evidence at trial that he was attempting to evade the victim. Rather, appellant maintained that he was not present during the crime. It was not until this appeal that appellant argued that he evaded the victim. Accordingly, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot disagree with the jury's resolution finding appellant knowingly attempted to cause physical harm to the victim with his vehicle. Therefore, appellant's first assignment of error is without merit.
 {¶ 30} In the interests of convenience, we will address appellant's third assignment of error prior to his second. Appellant's third assignment of error states:
 {¶ 31} "Appellant Was Denied A Fair Trial Due To Prosecutorial Misconduct During Cross-Examination And Closing Arguments In Violation Of His Rights As Guaranteed By Article I, Section 10 Of The Ohio Constitution And The Fifth, Sixth, And Fourteenth Amendments Of The United States Constitution."
 {¶ 32} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, *Page 10 739 N.E.2d 300, citing State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. SeeState v. Loza, 71 Ohio St.3d 61, 78, 1994-Ohio-409, 641 N.E.2d 1082.
 {¶ 33} Moreover, prosecutors are generally entitled to considerable latitude in closing argument. State v. Ballew, 76 Ohio St.3d 244, 255,1996-Ohio-81, 667 N.E.2d 369. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293, citing State v. Stephens (1970),24 Ohio St.2d 76, 82, 263 N.E.2d 773. "Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced." Ballew, supra; State v. Lorraine (1993), 66 Ohio St.3d 414,420, 613 N.E.2d 212.
 {¶ 34} Initially, we note that appellant failed to object to any of the alleged improper questions or statements made by the prosecutor. Therefore, he has waived all but plain error. State v. Slagle (1992),65 Ohio St.3d 597, 604-605, 605 N.E.2d 916. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990), *Page 11 50 Ohio St.3d 58, 62, 552 N.E.2d 894.
 {¶ 35} First, appellant complains that the prosecutor improperly questioned appellant regarding the type of bars he frequented. We find appellant's argument without merit. The prosecutor engaged in the following cross-examination with appellant:
 {¶ 36} "Q. Isn't it true the Harp is on West 45th and Detroit?
 {¶ 37} "A. Exactly in that area.
 {¶ 38} "Q. And the bar you're talking about West 28th
and 29 is that named Bounce?
 {¶ 39} "A. No, that I know of.
 {¶ 40} `Q. What's the name of —
 {¶ 41} "A. It's Man's World tool she had asking along those lines I'm not.
 {¶ 42} "Q. What kind of bar is that?
 {¶ 43} "A. It's a bar.
 {¶ 44} "Q. What type of bar? Have you ever been to it?
 {¶ 45} "A. Yes, in 1999, 97, since 2000.
 {¶ 46} "Q. What kind of bar, is it?
 {¶ 47} "A. It's a place where you go and drink. It's a leather bar where you go an drink. That's what most bars you do. What their themes are I believe shouldn't be relevant."
 {¶ 48} A review of the transcript reveals that the prosecutor asked appellant the question of "What kind of bar, is it?" in an effort to determine whether appellant *Page 12 
frequents taverns in the area where the automobile collision occurred, not to invoke the prejudices of the jury. This can be evidenced by the fact that the prosecutor asked appellant whether other taverns not associated with homosexuality, such as the Harp, were in the area. The prosecutor even explained during closing argument that his question was to determine whether appellant frequented the bars in the area. Accordingly, appellant's assertion in this regard is without merit.
 {¶ 49} Next, appellant argues that the prosecutor improperly questioned him regarding his prior DUI conviction and then referred to the conviction in his closing statement. First, we note that appellant opened the door to these questions by repeatedly referring to the accident in 2000 and the injuries suffered as a result therefrom during his direct testimony. The prosecutor, therefore, upon cross examination asked appellant about the accident he kept referring to. Such questioning was not improper considering the fact that appellant was using his injuries from the accident to gain sympathy from the jury or in the least to argue that he was unable to drive due to psychological damage from the accident. Furthermore, the prosecutor's question to appellant why he did not fight the DUI charges was a logical question following appellant's statement that the automobile accident in 2000 was not caused by intoxication. Accordingly, we find appellant's argument regarding his DUI without merit.
 {¶ 50} Lastly, appellant complains that the prosecutor suggested to the jury that appellant lied during his testimony. In this regard, the prosecutor stated the following: *Page 13 
 {¶ 51} "And I want you to ask yourselves, does that make sense? Who are you going to believe? Does the defendant have a motive to lie? Yes. Okay. He has a prior DUI. He has no license at the time of the car crash. Okay. Well that's bad enough. Then he drives his car over someone."
 {¶ 52} "Do you think he's going to lie? He's charged with felonious assault. Is he going to try to get out of this? Yes. Why did he do it in the first place? Well, things are okay until she started asking for documents. Do you have a driver's license? He admits I didn't have a driver's license back then. He's drunk so he freaks out. Okay? She's demanding this stuff. It wasn't her fault but she wants the information so she can, you know, report it. * * *"
 {¶ 53} The above referenced statements indicate that the prosecutor was not announcing his opinion as to the veracity of appellant. Rather, he was commenting on the motives appellant may have to lie. Such statements do not amount to prosecutorial misconduct.
 {¶ 54} "As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, The evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, has ulterior motives, including his own hide, for not telling the truth.' "State v. Draughn (1992), 76 Ohio App.3d 664, 670, 602 N.E.2d 790
(citations omitted). The prosecutor cannot say, however, "`I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the *Page 14 
prosecutor. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room." Id. (citations omitted).
 {¶ 55} Accordingly, we conclude that the suggestions made by the prosecutor during closing arguments of appellant's motivations to lie were not improper.
 {¶ 56} Furthermore, we do not find that any of the prosecutor's questions or statements complained of denied appellant a fair trial, nor do we find that the outcome of the trial court would have been different had the prosecutor not made the statements. The statements were not "inflammatory as to render the jury's decision a product solely of passion and prejudice against the appellant." State v. Williams (1986),23 Ohio St.3d 16, 20, 490 N.E.2d 906. Additionally, a review of the record demonstrates that ample evidence existed upon which the jury could base its verdict of guilty for felonious assault. Consequently, appellant's third assignment of error is without merit.
 {¶ 57} Appellant's second assignment of error states:
 {¶ 58} "Appellant Was Denied His Right To Effective Assistance Of Counsel As Guaranteed By Article 1, Section 10 Of The Ohio Constitution And The Sixth And Fourteenth Amendments To The Constitution."
 {¶ 59} In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052;State v. Bradley (1989), 42 Ohio St.3d 136, *Page 15 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."Strickland, supra, at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley, supra, at paragraph two of the syllabus; see, also,Strickland, supra, at 687.
 {¶ 60} A defendant has the burden of proving ineffective assistance of counsel and there is a strong presumption that a properly licensed trial counsel rendered adequate assistance. State v. Smith (1985),17 Ohio St.3d 98, 100, 477 N.E.2d 1128. As the Strickland Court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689; see, also,State v. Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476.
 {¶ 61} In the instant matter, appellant first asserts that defense counsel was ineffective because he failed to challenge the victim's identification of appellant by not filing a motion to suppress or performing a voir dire of the victim on the identification process. We find appellant's argument without merit.
 {¶ 62} First, we note that the failure to file a motion to suppress evidence, alone, is not enough to sustain a claim for ineffective assistance of counsel. State v. *Page 16 Smith (Nov. 6, 1997), Cuyahoga App. Nos. 69799, 70451, 71643, citingState v. Flors (1987), 38 Ohio App.3d 133, 528 N.E.2d 950. Appellant fails to present a legal argument or direct this court to any law that would support the conclusion that the identification was unlawful in any way. Therefore, we find that counsel was not ineffective for failing to file a motion to suppress or conduct a voir dire regarding the victim's identification of appellant.
 {¶ 63} Additionally, we find that defense counsel made a strategic decision not to file a motion to suppress or conduct a voir dire. "[J]udicial scrutiny of counsel's performance is highly differential, and reviewing courts must refrain from second guessing the strategic decisions of trial counsel." State v. Sallie (1998), 81 Ohio St.3d 673,674, 693 N.E.2d 267. In other words, trial strategy or tactical decisions cannot be the basis for a claim of ineffective counsel.State v. Godbolt, 2003CA00034, 2004-Ohio-317, citing State v.Clayton (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189.
 {¶ 64} Here, in an effort to discredit the victim, defense counsel made the tactical decision that it would be more advantageous to conduct a thorough cross-examination of the victim rather than file a motion to suppress or conduct a voir dire. Defense counsel questioned the victim regarding mistaking the time of the accident, her failure to summons police to the scene, the amount of light at the scene, whether she was drinking alcohol prior to the collision, whether the picture in the ID card was the same employed in the photo array, and the victim's delay in seeking medical attention. Additionally, defense counsel extensively questioned Detective Santiago *Page 17 
regarding the photo array. Accordingly, defense counsel was not ineffective for failing to file a motion to suppress or conduct a voir dire regarding the victim's identification of appellant.
 {¶ 65} Next, within this assignment of error, appellant argues that counsel was ineffective for failing to file a motion to suppress Detective Santiago's observations and photographs of appellant's automobile, arguing he searched appellant's premises without a warrant.
 {¶ 66} The Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case.Flors, supra, citing Kimmelman v. Morrison (1986), 477 U.S. 365,91 L.Ed.2d 305, 106 S.Ct. 2574. The burden is on the appellant to point to evidence in the record supporting suppression of evidence. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion."State v. Gibson (1980), 69 Ohio App.2d 91, 95, 430 N.E.2d 954. Moreover, counsel is not required to perform a futile act. State v. Martin (1983),20 Ohio App.3d 172, 174, 485 N.E.2d 717; State v. Lodge, Greene App. No. 2004 CA 43, 2005-Ohio-1908; State v. Davis, Butler App. No. CA2001-05-108, 2002-Ohio-865.
 {¶ 67} Here, appellant is unable to establish defense counsel's performance was ineffective because appellant has failed to establish that Detective Santiago's actions were contrary to law. First, we note that Detective Santiago testified that the vehicle was parked in a garage with the doors open and was in plain view from the *Page 18 
front of the house. The United States Supreme Court has found that theFourth Amendment "protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." California v. Ciraolo (2001),476 U.S. 207, 213; 106 S.Ct. 1809; 90 L.Ed.2d 210.
 {¶ 68} Additionally, Detective Santiago's observations and photographs would have been inevitably discovered during the investigation of appellant. Under the inevitable discovery exception, "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." State v.Perkins (1985), 18 Ohio St.3d 193, 480 N.E.2d 763. Accordingly, we find that trial counsel was not ineffective for failing to file a motion to suppress Detective Santiago's photographs and observations as such a filing would have been futile.
 {¶ 69} Also within this assignment of error, appellant argues that counsel was ineffective for failing to object to Officer Eggelmeyer's testimony, alleging the officer essentially repeated the victim's testimony. A review of the transcript reveals that Officer Eggelmeyer did not testify as to what the victim told him. Instead, he testified as to how he prepared the police report. Such testimony was offered to explain the investigative activities of the officer, not to prove the truth of the matter asserted. See State v. Thomas, 61 Ohio St.2d 223,232, 400 N.E.2d 401. "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was *Page 19 
directed." Id.
 {¶ 70} Furthermore, the victim did appear and testify at trial. Accordingly, appellant was provided with the opportunity to cross-examine the victim regarding the statements she gave Officer Eggelmeyer, thereby negating any issue with the Confrontation Clause. Accordingly, because Officer Eggelmeyer's testimony would have been admissible, defense counsel was not ineffective for failing to object to such testimony.
 {¶ 71} Additionally within this assignment of error, appellant asserts that counsel was ineffective for failing to object to the prosecutor's questions and statements during closing arguments concerning appellant's DUI conviction as well as his homosexuality. Also, appellant complains that counsel failed to object to the prosecutor accusing appellant of falsely testifying on the stand. In appellant's third assignment of error, we determined that the prosecutor's statements in these instances were not improper. Accordingly, defense was not ineffective for failing to object.
 {¶ 72} Finally, appellant contends that counsel was ineffective for failing to move for acquittal at the close of his case. During his case, appellant presented testimony that the victim was mistaken as to the perpetrator of the crime and that he was somewhere else at the time of the incident. Such evidence relates to the weight, not the sufficiency of the evidence. "A Crim.R. 29 motion for judgment of acquittal tests the legal sufficiency of the evidence. Questions involving the credibility of witnesses are beyond the scope of a Crim.R. 29 motion and left for the *Page 20 
trier of fact." State v. Harris, Cuyahoga App. No. 87915, 2007-Ohio-526
(citations omitted). Accordingly, we find appellant could not have ultimately been prejudiced by trial counsel's failure to properly file a Crim.R. 29 motion in this case. Appellant, therefore, has failed to establish ineffective assistance of trial counsel. Appellant's second assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY J. BOYLE, J., PATRICIA ANN BLACKMON, P.J., CONCURS. *Page 1