JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Kenny Phillips, appeals his convictions and sentences. For the reasons set forth below, we affirm in part, reverse in part and remand.
 {¶ 2} On June 12, 2006, the Cuyahoga County Grand Jury indicted appellant on the following counts: counts 1 through 4 alleged attempted murder, in violation of R.C. 2923.02/2903.02 with respect to the victims Kenneth Tolbert, Christopher Lovelady, Kevin Tolbert, and Leonard Brown; counts 5 through 10 alleged felonious assault in violation of R.C. 2903.11 with respect to those same victims; counts 11 and 12 alleged attempted felonious assault in violation of R.C. 2923.02/2903.11 with *Page 2 
respect to those same four victims; counts 13 and 14 alleged attempted aggravated murder in violation of R.C. 2923.02/2903.01 with respect to Officer Daniel Lentz; count 15 alleged attempted murder in violation of R.C. 2923.02/2903.02 with respect to Officer Lentz; count 16 alleged felonious assault in violation of R.C. 2903.11 with respect to Officer Lentz; count 17 alleged attempted felonious assault in violation of R.C. 2923.02/2903.11 with respect to Officer Lentz; count 18 and 19 alleged inducing panic in violation of R.C. 2917.31; and count 21 alleged resisting arrest in violation of R.C. 2921.33. One-, three-and five-year firearm specifications were included with counts 1 through 12. Counts 13 through 17 included one-, three-and seven-year firearm specifications. Appellant pled not guilty to all charges in the indictment.
 {¶ 3} The trial of this matter began on May 29, 2007. At trial, the state presented the following evidence.
 {¶ 4} During the morning hours of May 29, 2006, Officers Michael Keane and Daniel Lentz received a dispatch for assistance at the East 55th Street and Woodland area due to overcrowding. As the officers were en route, they witnessed an off-white, late model Chevrolet with a black hood and a large number "84" printed on the side of the car heading towards the police vehicle on East 55th Street. Before approaching the police vehicle, the Chevy made an abrupt u-turn in the middle of heavy traffic. The officers noticed the erratic driving and began pursuit of the vehicle. The vehicle continued down East 55th Street and erratically weaved in and out of traffic. The *Page 3 
Chevy then made an abrupt right turn onto Woodland Avenue.
 {¶ 5} When the vehicle turned, the officers lost sight of the vehicle for a short time, and heard a gunshot. Upon making the same turn, the officers witnessed the Chevy go left-of-center on Woodland Avenue and pull to the left side of a small Lincoln Mark VIII. The officers then witnessed gunshots being fired from the Chevy into the Lincoln. After the shots were fired, the Chevy quickly sped from the scene. Officer Lentz did not notice any other vehicles near the scene other than a gold vehicle that was driving in front of the Lincoln in the curb lane when the shots were fired.
 {¶ 6} Officer Keane, driving, activated the police vehicle's sirens and followed the vehicle. Officer Lentz then witnessed the occupants of the Chevy make many furtive movements. Initially, the Chevy slowed down slightly and pulled to the side, but before stopping, quickly sped off. Keane continued to chase the Chevy down Woodland. Before the vehicle came to a complete stop on East 65th Street, the occupants exited the Chevy.
 {¶ 7} Keane chased after and apprehended the driver, co-defendant, Michael Sutton, while Officer Lentz pursued the passengers of the vehicle.
 {¶ 8} Lentz testified that he saw two men in white shirts, carrying handguns, exit the passenger side of the Chevy. He then saw a third man exit the passenger side wearing dark clothing but not carrying a gun. The men in the white shirts ran off *Page 4 
into a field nearby and the man in the dark clothing ran in a different direction.
 {¶ 9} Lentz pursued the men with the handguns into the field. He explained that it was dark with bushes and brush all about. As he attempted to illuminate his flashlight, he heard three gunshots discharge nearby. He quickly fled the scene fearing for his safety. Officer Keane confirmed that he too heard the gunshots off in the distance.
 {¶ 10} As Officer Lentz was running, he saw one of the men, later identified as the co-defendant Deante Creel, fleeing. Lentz chased after Creel and witnessed him discard an object into the brush. Eventually, Lentz caught Creel and arrested him. After the chase, Officer Lentz extensively searched, but was unable to find, the object in the field.
 {¶ 11} As Lentz was taking Creel to the police car in handcuffs, he witnessed appellant, Kenny Phillips, attempting to return to the Chevrolet. Lentz then saw Officer Keane chase after appellant but suddenly fall to the ground. Lentz, concerned his partner may have been shot, raced after his partner, but Keane waved him on. Accordingly, Lentz proceeded to chase after appellant and eventually apprehended him.
 {¶ 12} In the meantime, the third passenger of the vehicle that was wearing dark clothing, later identified as Akeem Tidmore, ran across Woodland Avenue into the King Kennedy project and was arrested by Officers Jones and Lundy. *Page 5 
 {¶ 13} As a result of the shooting, Kenneth Tolbert, the driver of the Lincoln Mark VIII, suffered a gunshot wound to his head, which permanently caused paralysis to one side of his face. Christopher Lovelady was seated in the backseat behind Kenneth and also suffered from a gunshot wound to the head that resulted in permanent blindness to one eye. Kevin Tolbert, seated in the front passenger seat, and Leonard Brown, seated in the back passenger seat, were not injured.
 {¶ 14} A gunshot residue test was performed on each of the four co-defendant's hands, as well as the Chevy. The results of the test indicated that gunshot residue was found on appellant's hands and the passenger door window area of the Chevy. The hands of Creel, Sutton and Tidmore all tested negative for gunshot residue.
 {¶ 15} Detective Carl Hartman testified that the bullet holes found in the victim's vehicle were consistent with the fact that the shots originated from the left of the Lincoln and not from the front right side of the vehicle.
 {¶ 16} At the conclusion of the state's evidence, the defense moved for acquittal pursuant to Crim. R. 29(A). The trial court denied the request and the defense presented the following individuals for examination: Larry M. Dehus, Marsean Watters, Deante Creel, Kenny Phillips, and Michael Sutton.
 {¶ 17} Larry M. Dehus, a forensic scientist, testified that gunshot residue is easily transferrable and that a person who did not fire a weapon could be contaminated with gunshot residue. Dehus further opined that he was unable to *Page 6 
testify to a degree of certainty that the gunshot residue discovered on the Chevy was placed there that early morning or days or months before.
 {¶ 18} Marsean Watters, a friend of the defendants, testified that she witnessed the shooting. She explained that she saw a light-skinned arm exit a gold vehicle and fire gunshots at a black Lincoln, which was parked in the Rally's parking lot. After the shooting, the gold vehicle sped away.
 {¶ 19} Deante Creel, appellant, and Michael Sutton collectively testified that a gold car pulled up beside the black Lincoln, an arm exited the window of the gold car, and gunshots were fired into the Lincoln. Thereafter, the black Lincoln stopped and the gold car sped off. The vehicle the co-defendants were in, the Chevy, pulled to the side to allow the police to chase after the gold vehicle. The police, however, pulled up behind the Chevy and did not chase after the gold car. Frightened, Michael Sutton quickly fled from the police. Eventually, he stopped the vehicle on East 65th Street. He testified that he surrendered immediately, while the other co-defendants fled from the police. Both Creel and appellant denied having a weapon when exiting the vehicle. The defense then rested and the case proceeded to the jury.
 {¶ 20} On June 7, 2007, the jury found appellant guilty of the attempted murder charges in counts 1 through 4, felonious assault charges in counts 5 through 10, the attempted felonious assault charges in counts 11 and 12, the felonious assault and attempted felonious assault of a police officer charges in counts 16 and 17 and all *Page 7 
firearm specifications. Appellant was also found guilty of inducing panic as charged in counts in 18 and 19. The jury returned a not guilty verdict against appellant as to counts 13 and 14, attempted aggravated murder, count 15, attempted murder, and count 21, resisting arrest.
 {¶ 21} On June 28, 2007, the trial court sentenced appellant to a total of 92 years imprisonment. The court ordered the one-year firearm specifications contained in each of counts 1 through 17 to merge. The court further ordered the three-and five-year firearm specifications to run prior to and consecutive to each other and consecutive to 10 years on the underlying charges of attempted murder in each of counts 1 through 4. Additionally, the court ordered the three-and five-year firearm specifications in each of counts 5 through 10 be served prior to and consecutive to eight years on the underlying charges of felonious assault in each of those counts. The three-and five-year firearm specifications contained in counts 11 and 12 were ordered to be served consecutive to each other and consecutive to a five-year sentence on the attempted felonious assault convictions. The court ordered that the three-and seven-year firearm specifications in count 16 be served consecutive and prior to a 10 year sentence for underlying charge of felonious assault of a police officer. The three-and seven-year firearm specifications in count 17 were ordered to run consecutive and prior to the underlying charge of attempted felonious assault. The court also sentenced appellant to eighteen months on each of counts 18 and 19, *Page 8 
inducing panic. Finally, the court ordered that counts 1 through 4 run consecutive to each other; counts 5 through 10 run concurrent with each other and concurrent with all other counts; counts 11 and 12 run concurrent with each other and concurrent with all other counts; counts 16 and 17 run concurrent with each other but consecutive to counts 1 through 4; and counts 18 and 19 run concurrent with each other and concurrent with all other counts.
 {¶ 22} Appellant now appeals and presents 14 assignments of error for our review.
 {¶ 23} Appellant's first assignment of error states:
 {¶ 24} "Defendant was denied due process of law when the court permitted an amendment to the indictment changing the date of the offense without resubmission of the grand jury."
 {¶ 25} Here, appellant complains the court erred by permitting an amendment to the date of the offenses contained in the indictment. More specifically, prior to jury selection, the trial court permitted the date of the offenses in the indictment to be changed from May 26, 2006 to May 29, 2006. Appellant maintains that the amendment created a concern that appellant could be convicted of an offense on evidence not presented to the grand jury, in violation of his due process rights. We disagree.
 {¶ 26} Appellant argues the trial court's amendment violated Section 10, *Page 9 
Article I of the Ohio Constitution, which "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury." State v. Headley (1983),6 Ohio St.3d 475, 478, 453 N.E.2d 716.
 {¶ 27} Crim. R. 7(D) governs amendments to indictments and states in part: "[t]he court may at any time before, during, or after a trial amend the indictment, * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, * * * the defendant is entitled to a discharge of the jury on his motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceedings with the trial, or by a postponement thereof to a later day with the same or another jury. * * *"
 {¶ 28} Pursuant to this rule, a court may allow an amendment to an indictment provided no change is made to the name or identity of the crime charged. A decision permitting an amendment that changes the name or identity of the charge constitutes reversible error regardless of whether the defendant can establish prejudice. State v. Bell, Fairfield App. No. 05-CA-67, 2006-Ohio-6560; State v. Honeycutt, Montgomery App. No. 19004, 2002-Ohio-3490. If an amendment does not change the name or *Page 10 
identity of the crime charged, the defendant is entitled to a discharge of the jury or a continuance, "unless it appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment was made." Crim. R. 7(D). We review the trial court's decision regarding whether a defendant was misled or prejudiced under an abuse of discretion standard.Bell and Honeycutt, supra. An abuse of discretion connotes more than an error in law or judgment, it implies the trial court's decision was unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 29} "In a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. It is sufficient to prove the alleged offense at or about the time charged." Tesca v. State (1923), 108 Ohio St. 287, 140 N.E. 629, at paragraph one of the syllabus; see, also, State v. Dietz, Cuyahoga App. No. 81823, 2003-Ohio-3249. In State v. Sellards (1985),17 Ohio St.3d 169, 171, 478 N.E.2d 781, the Supreme Court of Ohio explained:
 {¶ 30} "Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to prosecution." Id. at 171.
 {¶ 31} In this case, the indictment prescribed the date of the offense as May 26, *Page 11 
2006. There is no dispute that the correct date of the offense was May 29, 2006. The trial court's amendment to the indictment to correct the date of the offense by three days did not change the substance of the indictment. The location of the offense, the circumstances surrounding the charges, the victims, and the accused all remained the same. Accordingly, we find that the change in the date did not alter the name or identity of the crime.
 {¶ 32} Furthermore, we find that appellant was not misled or prejudiced by the amendment, and thus, is not entitled to a discharge of the jury and a continuance. See Crim. R. 7(D). First, we reiterate that the amendment did not change the name or identity of the offenses. It only changed the date on which the offense occurred, and only changed it by three days. The variance in the date did not charge new or different offenses or alter the substance of the offenses. The error was merely in form. Moreover, the change was made in advance of trial and appellant had notice of the amendment prior to presenting its defense. Thus, appellant has failed to establish he was misled or prejudiced by the amendment. Accordingly, we find that the amendment to the indictment did not create a risk that the grand jury returned an indictment on facts different than those heard at trial. Appellant's first assignment of error is without merit.
 {¶ 33} Appellant's second assignment of error states:
 {¶ 34} "Defendant was denied his Sixth Amendment right to present a defense *Page 12 
when the court would not secure the appearance of a defense witness, Willie Wayne Moore."
 {¶ 35} In this assignment of error, appellant argues that he was entitled to present Willie Wayne Moore for examination because he had information that he was the actual shooter involved in this case. We find appellant's argument in this regard without merit.
 {¶ 36} In State v. Juenger, Butler App. No. CA2003-02-049,2004-Ohio-796, the court affirmed the trial court's refusal to compel a witness's appearance after he failed to appear for trial. The trial court reasoned that the defense could not assure that the witness had actually been served with a subpoena.
 {¶ 37} Here, the trial court did not error in failing to issue a bench warrant. The trial court granted two requests by the defense, on March 15, 2007 and April 16, 2007, to continue the matter in order to secure a witness. Two and a half months later, on May 29, 2007, the trial court denied appellant's third request for a continuation. In doing so, it reasoned Moore had not been served with a subpoena and the proffered statements regarding Moore's participation in the event were vague and inexact as to what occurred. Nevertheless, the trial court promised the defense that if Moore was served and did not appear, then a bench warrant would be issued. In the end, however, appellant failed to assure the trial court that Moore had been served a subpoena or that he had received notice. Therefore, pursuant to Juenger, *Page 13 
supra, we uphold the trial court's refusal to issue an arrest warrant.
 {¶ 38} Appellant's third assignment of error states:
 {¶ 39} "Defendant was denied the right to present a defense when the court would not allow previous recorded statements from Willie Wayne Moore."
 {¶ 40} Here, appellant maintains that the trial court erred in refusing the statement of Willie Barnes concerning Moores allegedly admitting to shooting someone. We find appellant's assertion without merit.
 {¶ 41} A testimonial statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354, 158 L.Ed.2d 177.
 {¶ 42} Evid. R. 804(A)(5) defines the initial requirement of unavailability in the following manner:
 {¶ 43} "`Unavailability as a witness' includes situations in which the declarant:
 {¶ 44} "(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (B)(2), (3), or (4), his attendance or testimony) by process or other reasonable means. * * *"
 {¶ 45} A witness is not considered unavailable unless the appellant has made reasonable efforts in good faith to secure his presence at trial. State v. Keairns *Page 14 
(1984), 9 Ohio St.3d 228, 230, 460 N.E.2d 245. "A showing of unavailability under Evid. R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." Id. at 232.
 {¶ 46} In this matter, appellant failed to present any evidence that Willie Barnes was unavailable to testify at the trial. Appellant did not issue a subpoena for Barnes. Additionally, the state did not have an opportunity to cross-examine the witness. Accordingly, as appellant has failed to present any evidence establishing that Barnes was unavailable or that the state had an opportunity to cross-examine him, the trial court did not error in refusing to admit his previously recorded statement.
 {¶ 47} Appellant's fourth assignment of error states:
 {¶ 48} "Defendant was denied due process of law and a fair trial when the court allowed the prosecutor to question defendant concerning juvenile adjudications."
 {¶ 49} Evid. R. 609(D) and R.C. 2151.358(H) create a clear bar to the introduction of evidence of juvenile adjudications. The evidence rule allows the admission of evidence of prior juvenile adjudications only to the extent allowed by statute. The statute provides in pertinent part:
 {¶ 50} "* * * The disposition of a child under the judgment rendered or any evidence given in court is not admissible as evidence against the child in any other case or proceeding in any other court, except that the judgment rendered and the *Page 15 
disposition of the child may be considered by any court only as to the matter of sentence or to the granting of probation. * * *"
 {¶ 51} The Supreme Court of Ohio has created a very narrow exception to the rule presented in Evid. R. 609(D) and R.C. 2151.358(H). InState v. Marinski (1942), 139 Ohio St. 559, 41 N.E.2d 387, syllabus, the Supreme Court stated "when a defendant in a criminal case is permitted to introduce evidence of his life history, he waives the protection of the [predecessor of R.C. 3151.358] and may be cross-examined with reference to the disposition of any charge preferred against him as a juvenile." See, also, State v. Cox (1975), 42 Ohio St.2d 200,327 N.E.2d 639.
 {¶ 52} In the instant matter, the record demonstrates that appellant testified as to his life history and that it was his "first time ever getting in trouble." Initially, appellant offered that it was his 18th birthday on the day of the incident. He further provided that his grandmother passed away a few weeks prior and he was out to "get [his] grandma off [his] head." Defense counsel then proceeded to ask appellant regarding his close relationship with his grandma, her name, whether he spent time with her, and whether she was nice. Defense counsel further asked appellant whether his mother was in the courtroom, to point her out, and whether she had been there every day of the trial.
 {¶ 53} Appellant further testified that this incident was his first time being in trouble with the police. He offered that he "don't play with guns. Everybody go to *Page 16 
school. We try to do right." He further testified that he was scared because he "ain't never been in that type stuff * * * we don't be in trouble. This is my first time ever getting in trouble." He further testified that he played on a basketball team and "ain't never been in the type of crime scene."
 {¶ 54} Finally, upon cross-examination, appellant again confirmed that he had "never been in trouble" and then added "not as an adult." The state then, and only then, proceeded to question appellant regarding this testimony by inquiring into his juvenile record. Appellant then responded that "he ain't never been in trouble as an adult" and further admitted that he had "been in trouble as a juvenile, only twice" and that he "really wasn't never convicted." The state proceeded further into the juvenile adjudications appellant had not mentioned and reaffirmed that appellant had just turned 18 and was an adult on the night of the incident. Considering the aforementioned testimony, we find an exception existed permitting the prosecutor to ask appellant regarding his juvenile adjudications. Appellant's fourth assignment of error is overruled.
 {¶ 55} Appellant's fifth assignment of error states:
 {¶ 56} "Defendant was denied due process of law when the court allowed evidence of gunshot residue."
 {¶ 57} Within this assignment of error, appellant contends the trial court erred in admitting evidence of gunshot residue because Martin Lewis was not properly *Page 17 
qualified as an expert. We disagree.
 {¶ 58} Initially, we note that, when specifically asked by the trial court, the defense did not object to Lewis' qualification as an expert witness. Accordingly, we review this error for plain error.
 {¶ 59} Pursuant to Crim. R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v. Phillips,74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643; State v. Moreland (1990),50 Ohio St.3d 58, 62, 552 N.E.2d 894.
 {¶ 60} We find the state adequately established Lewis' competency as an expert. Evid. R. 104(A) grants the trial court the authority to determine whether an individual qualifies as an expert. We review that determination under an abuse of discretion standard. State v.Williams (1983), 4 Ohio St.3d 53, 58, 446 N.E.2d 444, 448. "An abuse of discretion connotes more than an error in law or judgment. It implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 61} Evid. R. 702 provides the requirements for an expert to qualify to testify. *Page 18 
Evid. R. 702(B) and (C) mandate that:
 {¶ 62} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 63} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 64} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 65} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 66} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 67} Pursuant to Evid. R. 702, a witness may qualify as an expert by reason of her knowledge, experience, skill, training, or education. Special education or certification is not necessary to render a witness as an expert. State v. Baston, 85 Ohio St.3d 418, 423, 1999-Ohio-280,709 N.E.2d 128. Moreover, the witness need not be the best witness on the subject matter. Alexander v. Mt. Carmel Med. Ctr. (1978),56 Ohio St.2d 155, 159, 383 N.E.2d 564. The witness need only possess the *Page 19 
knowledge that will provide the trier of fact with assistance in performing its fact-finding duty. Baston, supra; State v.D'Ambrosio, 67 Ohio St.3d 185, 191, 1993-Ohio-170, 616 N.E.2d 909.
 {¶ 68} Lewis testified that he possessed a chemistry degree, worked as a forensic analyst for seven years and has personally examined at least 1,200 residue samples. Moreover, he described what happens when a firearm is discharged, what gunshot residue is, how it can be collected and tested, the steps taken to prevent contamination and ensure untainted results, and described the advances that have been made in testing and what factors can explain positive or negative results. Furthermore, gunshot residue test is a scientific test readily accepted by the courts as indicated by the testimony of Michael Belle, the individual who retrieved the samples from the defendants' hands and the Chevy. Finally, Lewis and Belle both testified as to the reliability of the test, as well as the precautions they personally took against contamination and to ensure the reliability of the test. In light of the foregoing testimony, we find the requirements of Evid. R. 702 have been met. Accordingly, Lewis was properly qualified as an expert so as to testify that gunshot residue was found in the sample collected from appellant's hand, as well as the sample collected from the front passenger window area of the Chevy. This assignment of error is overruled.
 {¶ 69} Appellant's sixth assignment of error states: *Page 20 
 {¶ 70} "Defendant was denied due process of law when the court instructed on aiding and abetting."
 {¶ 71} Within this assignment of error, appellant argues the trial court erred in instructing the jury on aiding and abetting because the evidence in the record as to appellant does not support such an instruction. He argues that an aiding and abetting instruction is inappropriate where there is no evidence presented indicating a principal offender. We disagree.
 {¶ 72} As a procedural matter, we note that appellant failed to object to this court's instruction during the trial of this matter. Therefore, he has waived all but plain error. State v. Slagle (1992),65 Ohio St.3d 597, 604-605, 605 N.E.2d 916.
 {¶ 73} An aiding-and-abetting theory is suitable when a person "`acting with the kind of culpability required for commission of an offense * * *' aids or abets another in committing the act. R.C. 2923.03(A)(2)." State v. Scott, Cuyahoga App. No. 87942, 2007-Ohio-528.
 {¶ 74} In this case, the state relied on a complicity theory. R.C. 2923.03 defines complicity as the following:
 {¶ 75} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:"
 {¶ 76} "(1) Solicit or procure another to commit the offense;"
 {¶ 77} "(2) Aid or abet another in committing the offense;"
 {¶ 78} "(3) Conspire with another to commit the offense in violation of *Page 21 
section 2923.01 of the Revised Code;"
 {¶ 79} "(4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 80} "(B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender."
 {¶ 81} "(C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code."
 {¶ 82} Ohio law is well-settled that, to convict an offender of complicity, the state need not establish the principal's identity. Rather, R.C. 2923.03(C) only requires that the state prove that a principal committed the offense. State v. Perryman (1976),49 Ohio St.2d 14, 358 N.E.2d 1040, paragraph four of the syllabus, vacated on other grounds, 438 U.S. 911, 57 L. Ed. 2d 1156, 98 S.Ct. 3136; State v.Langford, Cuyahoga App. No. 80737, 2002-Ohio-6045.
 {¶ 83} In the case presented, the state was not required to identify a principal as long as it was able to establish appellant acted in complicity with the person who fired the gun at the Chevy. Appellant admitted that he was a passenger in the Chevy during the early morning hours of May 29, 2006. The victims, Kenneth Tolbert and Christopher Lovelady, were in the vehicle immediately adjacent to the Chevy on Woodland Avenue at the time of the shooting. Officer Keane and Lentz testified that they witnessed gunshots come from the Chevy. Gunshot residue was found both on *Page 22 
appellant's hands and the Chevy. Officer Lentz testified to specifically witnessing appellant and co-defendant Creel holding a gun when they fled from the Chevy and police. The officer later witnessed Creel discard an object the officer believed to be a firearm. In light of the aforementioned, we find sufficient evidence justifying a jury instruction as to whether appellant and his co-defendants aided and abetted a principal offender in committing these offenses. Appellant's sixth assignment of error lacks merit.
 {¶ 84} Appellant's seventh assignment of error states:
 {¶ 85} "Defendant was denied due process of law when the court overruled defendant's motions for judgment of acquittal."
 {¶ 86} Crim. R. 29 provides in pertinent part:
 {¶ 87} "(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 88} Upon review of a ruling on Crim. R. 29(A), this court construes the evidence in a light most favorable to the state. An entry denying the motion is proper "if the evidence is such that reasonable minds can reach different conclusions as to *Page 23 
whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216,555 N.E.2d 689, citing State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
 {¶ 89} Within this assignment of error, appellant argues that the evidence does not support his convictions. We find appellant's arguments without merit.
 {¶ 90} First, appellant maintains that there was insufficient evidence to convict appellant of counts 14, 15, 16, 17. We note that the jury found appellant not guilty of counts 14 and 15, and thus, find appellant's argument in regard to those counts without merit.
 {¶ 91} As to counts 16 and 17, felonious assault and attempted felonious assault of a police officer, we find sufficient evidence warranting those convictions. The evidence established that Officer Lentz was on duty on May 29, 2006 when he observed gunshots being fired from the Chevy into the Lincoln. After activating the police lights and sirens, Officer Lentz and his partner followed the Chevy until the vehicle stopped. Lentz witnessed three individuals exit the vehicle. Two of the occupants were wearing white shirts and carried handguns. Lentz immediately broadcasted over the police radio that the individuals were carrying guns. Then he followed them into a field. While attempting to retrieve his flashlight, he heard three gunshots. Officer Keane verified that he too heard the gunshots fired in Officer Lentz's vicinity. Lentz testified that two of the gunshots were from a small caliber gun *Page 24 
and one was from a larger caliber gun. Officer Lentz then fled the area and, as he was doing so, witnessed co-defendant Creel in a white shirt run from the field and discard an object into the brush. Shortly thereafter, appellant was apprehended, wearing a white shirt. Moreover, gunshot residue was retrieved from appellant's hands. While the evidence may or may not have established appellant as the shooter, it proved he acted in complicity with the person who was. As the state advanced a complicity theory, it was not required to identify the shooter. In light of the foregoing evidence, we find the trial court did not err in denying appellant's motion for acquittal.
 {¶ 92} Next, appellant argues the trial court erred in not granting his motion for acquittal as to the attempted murder counts contained in counts 1 through 4 and the felonious assault charges, assumingly in counts 5 through 10. Appellant argues there is no evidence establishing that he did anything to encourage, participate in, promote or plan the shooting. As previously stated, the state advanced a complicity theory. Accordingly, it was not required to identify the shooter. It is merely enough to establish appellant acted in complicity with the person who did.
 {¶ 93} The evidence in this case sufficiently supports appellant's convictions for attempted murder, felonious assault, and attempted felonious assault with regard to the victims, Kenneth Tolbert, Christopher Lovelady, Kevin Tolbert, and Leonard Brown. *Page 25 
 {¶ 94} Both Officers Keane and Lentz testified that they witnessed multiple gunshots being fired from the Chevy to the Lincoln Mark VIII, in which Kenneth Tolbert, Kevin Tolbert, Christopher Lovelady, and Leonard Brown were passengers. Appellant admitted to being a passenger in the Chevy, along with the co-defendants.
 {¶ 95} Immediately, the officers activated their lights and sirens and the Chevy sped away. Eventually, the Chevy stopped and appellant, along with the other occupants, fled the vehicle. While exiting, Officer Lentz witnessed appellant, as well as co-defendant Creel, carrying handguns. Later, tests revealed gunshot residue on appellant's hands, as well as the Chevy. Additionally, an inspection revealed that the Lincoln was riddled with gunshots. As a result of the shooting, Kenneth Tolbert and Christopher Lovelady each suffered from gunshots to the head.
 {¶ 96} The evidence in this case indicates that appellant may have been the shooter, or in the least, acted in complicity with the shooter. Therefore, the trial court did not err in denying appellant's motion for acquittal as to the attempted murder, felonious assault, and attempted felonious assault counts.
 {¶ 97} Appellant also argues he could not have been rationally found guilty of the felonious assault charges when he was found not guilty of all the firearm specifications contained therewith. Appellant, however, is mistaken and has confused himself with another co-defendant. Appellant was found guilty of the firearm specifications. Accordingly, this argument is without merit. *Page 26 
 {¶ 98} Appellant next complains the trial court should have granted him acquittal as to the inducing panic charges contained in counts 18 and 19. We find sufficient evidence establishing that he unlawfully caused serious public inconvenience or alarm by committing an offense with reckless disregard of the likelihood that its commission would cause serious public inconvenience or alarm, resulting in physical injury to Kenneth Tolbert and Christopher Lovelady.
 {¶ 99} In the case sub judice, the shooting occurred in an area that was densely crowed with pedestrian and vehicular traffic. The charges were indicted separately for several reasons. The defendants' actions in this shooting resulted in injury to Tolbert and Lovelady and caused serious public alarm when the shooting broke out on Woodland Avenue, and when the victims later sought assistance from others in their panicked drive to find a hospital. Accordingly, we reject appellant's argument in this regard.
 {¶ 100} He also contends that he should be charged with only one count of inducing panic and not two because the allegation of physical harm to both individuals should be subsumed within one count. Appellant, however, has failed to provide any law to support this argument. Accordingly, his argument in this regard is without merit.
 {¶ 101} Finally, appellant asserts that his conviction as a claimed aider and abettor is not supported by sufficient evidence. As previously discussed, the *Page 27 
defendants acted in complicity with one another in their effort to shoot at the group of men in the Lincoln vehicle. As a result of their actions, both Tolbert and Lovelady were struck in the head and the vehicle was riddled with bullets. Accordingly, we find this argument is without merit and his seventh assignment of error is overruled.
 {¶ 102} Appellant's eighth assignment of error states:
 {¶ 103} "Defendant was denied due process of law when he was sentence [sic] to a five (5) year firearm specification when the court did not inform the jury as to all of the elements of the offense."
 {¶ 104} Here, appellant complains that the trial court erred when it instructed the jury on the five-year firearm specifications contained in counts 1 through 12. More specifically, appellant argues that the trial court omitted the requirement of "purposely or knowingly causing or attempting to cause death or physical harm to another" when instructing the jury as to the five-year firearm specifications.
 {¶ 105} When instructing the jury as to the five-year firearm specification, the trial court provided the following:
 {¶ 106} "If your verdict is guilty as to counts one and/or two and/or three and/or four, you will separately decide whether the State proved beyond a reasonable doubt that any one or all of the defendants had a firearm on or about his person or under his control while committing the offense of attempted murder. And the offense *Page 28 
was committed by discharging a firearm from a motor vehicle other than a manufactured home. You will then indicate your finding on the specification verdict form page four."
 {¶ 107} Initially, we note that appellant failed to object to this alleged error during the trial of this matter. Therefore, he has waived all but plain error. Slagle, supra. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." Moreland, supra.
 {¶ 108} We find any error by the trial court in failing to include the elements of "purposely or knowingly" constitutes harmless error. The "purposely or knowingly" language omitted in the instruction was included in each of the five-year firearm indictments. Additionally, the "purposely or knowingly" elements were also contained in the trial court's instruction for the underlying offenses. For example, as to the charges of attempted murder as alleged in counts 1 through 4, the court instructed the following:
 {¶ 109} "* * * you must find beyond a reasonable doubt that on or about the 29th day of May, 2006 in Cuyahoga County, Ohio, that the defendants did purposely attempt to cause the death of in count one, Kenneth Tolbert; in count two, Christopher Lovelady; in count three, Kevin Tolbert; and in count four, Leonard Brown." (Emphasis added.)
 {¶ 110} Accordingly, any alleged error by the trial court in failing to include *Page 29 
the element of "purposely or knowingly" in the court's instruction was harmless and would not have changed the outcome at trial. Appellant's eighth assignment of error is overruled.
 {¶ 111} Appellant's ninth assignment of error states:
 {¶ 112} "Defendant was denied due process of law when no culpable mental state was required to convict defendant of the seven (7) year firearm specification under _2941.1412 of the Ohio Revised Code."
 {¶ 113} Despite appellant's contention, we find that the firearm statute need not contain an element of culpable mental state. State v.Swiger (Apr. 3, 1991), Summit App. No. 14651. Because the statute merely enhances a penalty and does not prescribe a separate offense, no culpable mental state is required. Id., relying on State v. Allen (April 2, 1986), Summit App. No. 12161. "Such a holding does not result in a constitutional violation of the [appellant's] minimal due process rights." Swiger, supra. This assignment of error is overruled.
 {¶ 114} Appellant's tenth assignment of error states:
 {¶ 115} "Defendant was denied due process of law and subjected to multiple punishments when he was sentenced separately based on firearm specifications."
 {¶ 116} Ohio courts have continuously held that a trial court does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions by *Page 30 
sentencing a defendant to firearm specifications that are consecutive to the sentence imposed for the underlying offense. In State v. Price
(1985), 24 Ohio App.3d 186, 493 N.E.2d 1372, the court provided:
 {¶ 117} "R.C. 2929.71 (additional three years of actual incarceration for offenses involving a firearm) does not create a separate offense and does not force a defendant to face multiple punishments for the same offense. Accordingly, a sentence imposed under statute does not violate R.C. 2941.25 (multiple counts) or the Double Jeopardy Clauses of the United States and Ohio Constitutions."
 {¶ 118} Id. at syllabus.
 {¶ 119} The court in State v. Loines (1984), 20 Ohio App.3d 69,484 N.E.2d 727, also stated:
 {¶ 120} "It is not a violation of double jeopardy for the trial court to impose a consecutive sentence of three years prior to the sentence of the underlying felony, as it is clear that the legislature intended to permit cumulative sentencing under R.C. 2929.71."
 {¶ 121} Id. at paragraph three of the syllabus.
 {¶ 122} Accordingly, we find that appellant's consecutive sentences on both the firearm specifications and the underlying offenses did not constitute double punishment and was within the legislature's intentions. See, also, State v. Walker (June 30, 2000), Montgomery App. No. 17678 (finding that, pursuant to R.C. 2929.14, *Page 31 
the Ohio legislature has clearly authorized the imposition of cumulative punishments for both three-and five-year firearm specifications).
 {¶ 123} Appellant's eleventh assignment of error states:
 {¶ 124} "Defendant was denied due process of law when he was sentenced to a felony sentence for inducing panic."
 {¶ 125} Here, appellant argues that the trial court improperly sentenced him to a felony for his inducing panic conviction. Rather, appellant argues, he should have been sentenced to a misdemeanor because the jury verdict did not contain the additional findings required under R.C. 2917.31(C)(2) to enhance the degree of the penalty for inducing panic from a misdemeanor to a felony. We find merit with appellant's argument.
 {¶ 126} R.C. 2945.75 states:
 {¶ 127} "(A) When the presence of one or more additional elements makes an offense one of more serious degree:"
 {¶ 128} "(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense."
 {¶ 129} "(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are *Page 32 
present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 130} The Supreme Court of Ohio in State v. Pelfrey,112 Ohio St.3d 422, 2007-Ohio-256, held that "pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." Id. at 426. R.C. 2945.75
cannot be fulfilled by demonstrating additional circumstances, such as the verdict includes the language of the indictment, the verdict form incorporates the indictment, or by presenting evidence establishing the aggravating element at trial. Id.
 {¶ 131} Inducing panic is a fourth degree felony when the panic results in physical harm to a person. R.C. 2917.31(C)(3). The jury verdict form for count 18, inducing panic, stated the following in its entirety:
 {¶ 132} "We, the Jury in this case being duly empaneled and sworn, do find the Defendant, Kenny Phillips, (*) Guilty of Inducing Panic, in violation of R.C. 2917.31(A)(3) of the Ohio Revised Code, as charged in Count Eighteen of the Indictment."
 {¶ 133} The jury verdict form for count 19 was nearly identical changing only the last part of the statement to "as charged in Count Nineteen of the *Page 33 
Indictment."
 {¶ 134} Both of the jury's verdicts in this instance did not state either the degree of the offense or the additional elements that make the offense of inducing panic a fourth degree felony. We note that the trial court's journal entry classifying the verdicts of guilty as "F4"[1] does not suffice in this case to render the offenses as felonies. Had the trial been a bench trial, the trial court's notation of "F4" would have been sufficient. This case, however, was a jury trial. Because the jury was the trier of fact as to these charges, the jury verdict form must have included either the additional elements or the "F4" designation to render the verdict valid pursuant to R.C. 2945.75.
 {¶ 135} Accordingly, since neither requirements are present, "a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." R.C. 2945.75(A)(2). In this case, appellant can be convicted of only a first-degree misdemeanor for both counts eighteen and nineteen, the least degree under *Page 34 
R.C. 2917.31(C)(2) for the offense of inducing panic. Accordingly, we reverse appellant's convictions for inducing panic as charged in counts 18 and 19 and remand the case for the trial court to enter a judgment convicting appellant of inducing panic as a first-degree misdemeanor.
 {¶ 136} Appellant's twelfth assignment of error states:
 {¶ 137} "Defendant was denied due process of law and subjected to multiple punishments when the court failed to merge the offenses based upon the court's finding."
 {¶ 138} Within this assignment of error, appellant maintains that the trial court erred in not merging his multiple sentences for attempted murder as charged in counts 1 through 4 and his sentences for counts 5 through 12 which included counts of felonious assault and attempted felonious assault. Appellant argues that, by being sentenced for attempted murder, felonious assault, and attempted felonious assault, he received multiple punishments in violation of his constitutional rights.
 {¶ 139} We note that the trial court ordered that appellant's sentences for attempted murder, felonious assault, and attempted felonious assault be served concurrently to each other. Nevertheless, we must still consider appellant's argument that the convictions are allied offenses of similar import because "[w]hile it is true that appellant's jail term is not enhanced by the error, there is a wide range of unpredictable adverse consequences (such as unfavorable parole considerations) *Page 35 
potentially stemming from the [allegedly] erroneous conviction[s]."State v. Law (Apr. 4, 1991), Cuyahoga App. No. 58326.
 {¶ 140} R.C. 2941.25 provides:
 {¶ 141} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 142} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 143} First, we find that attempted murder, felonious assault, and attempted felonious assault are not allied offenses of similar import, and thus, are not subject to merger. R.C. 2941.25 mandates the following two-step analysis in determining whether two offenses are allied offenses of similar import:
 {¶ 144} "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be *Page 36 
convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." State v.Blankenship (1988), 38 Ohio St.3d 116, 117, 526 N.E. 2d 816.
 {¶ 145} In State v. Ranee (1999), 85 Ohio St.3d 632, 1999-Ohio-291,710 N.E.2d 699, the Supreme Court of Ohio clarified that courts should compare the statutory elements of the offenses in the abstract rather than consider the particular facts of the case. The court reasoned that "* * * comparison of the statutory elements in the abstract is the more functional test, producing `clear legal lines capable of application in particular cases.'" Id. at 636, quoting Kumho Tire Co., Ltd. v.Carmichael (1999), 526 U.S. 137, 148, 119 S. Ct. 1167, 1174,143 L. Ed. 2d 238, 250.
 {¶ 146} Recently, the Supreme Court of Ohio in State v. Cabrales,118 Ohio St.3d 54, 57, 2008-Ohio-1625, 884 N.E.2d 181, noted that the appellate courts have varied in their application of Ranee's "abstract elements comparison test"; thus, resulting in inconsistent and unreasonable results. Id. at 58-59. The court in Cabrales noted that the appellate courts have misapplied Ranee when they applied a "strict textual comparison" of the elements under R.C. 2941.25(A). Id. at 59.Ranee does not require that the elements of compared offenses match exactly in order to be allied offenses of similar import. Id. Such an interpretation would result in only identical offenses being considered allied because they are the only offenses whose *Page 37 
elements align exactly. Id. Accordingly, the court held:
 {¶ 147} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import."
 {¶ 148} In applying the foregoing holding, the court determined that trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import. The court reasoned that commission of the one offense necessarily results in commission of the other offense. The court explained:
 {¶ 149} "To be guilty of possession under R.C. 2925.11(A), the offender must `knowingly obtain, possess, or use a controlled substance.' To be guilty of trafficking under R.C. 2925.03(A)(2), the offender must knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, knowing, or having reason to know, that the substance is intended for sale. In order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must `hav[e] control over' it. R.C. 2925.01(K) (defining `possession')." Id. at _30. *Page 38 
 {¶ 150} The court, however, did not find trafficking under R.C. 2925.03(A)(1) and trafficking under R.C. 2925.03(A)(2) allied offenses of similar import. Id. at _32. The court reasoned that trafficking under R.C. 2925.03(A)(1) requires the offender to sell or offer to sell a controlled substance. Id. On the other hand, trafficking under R.C. 2925.03(A)(2) requires the offender to knowingly prepare for distribution, or distribute, a controlled substance that he or she knows, or has reason to know, is intended for sale. Id. R.C. 2925.03(A)(1) requires that the offender intends to sell the controlled substance, while R.C. 2925.03(A)(2) merely mandates that the offender know that the substance is intended for sale. Id. A person other than the offender can perform the sale. Id. Accordingly, the Supreme Court determined:
 {¶ 151} "Thus, an offender could commit trafficking under R.C. 2925.03(A)(2) and not necessarily commit trafficking under R.C. 2925.03(A)(1), because the offender merely knows that the controlled substance is intended for sale, as opposed to actually offering it for sale or selling it personally. Conversely, one could sell or offer to sell a controlled substance without ever undertaking many of the actions that constitute trafficking under R.C. 2925.03(A)(2), i.e., preparing for shipping or shipping the controlled substance." Id.
 {¶ 152} In the instant matter, we apply the holding reached inCabrales, supra, and find that the offenses of attempted felonious assault, felonious assault, and attempted murder are not allied offenses of similar import because, in comparing *Page 39 
the elements of the offenses in the abstract, the offenses are not similar so that the commission of one offense will necessarily result in the commission of the other.
 {¶ 153} Attempt is defined in R.C. 2923.02 as:
 {¶ 154} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 155} A person commits murder when they "purposely cause the death of another * * *." R.C. 2903.02.
 {¶ 156} Finally, R.C. 2903.11, the statute governing felonious assault, provides the following:
 {¶ 157} "(A) No person shall knowingly do either of the following:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 158} First, we find that attempted murder and felonious assault are not allied offenses because one could commit an attempted murder and not necessarily commit a felonious assault and vice versa. When committing the crime of attempted murder, an offender must engage in conduct which purposely attempts to "cause[s] the death of another." R.C. 2903.02
(emphasis added). On the other hand, when committing the offense of felonious assault, an offender must knowingly "cause *Page 40 serious physical harm to another" with or without a deadly weapon. R.C. 2903.11 (emphasis added). Felonious assault requires actual physical harm and attempted murder does not.
 {¶ 159} For example, an offender could swing a baseball bat at a victim's kneecaps, intending to harm them, but not kill them. In such a case, the offender would be guilty of felonious assault but not attempted murder. Likewise, an offender could shoot a firearm at someone's head intending to kill him and miss him, and thus, not commit a felonious assault because no serious physical harm resulted. Having determined that the commission of one offense does not necessarily result in the commission of the other offense, we find that attempted murder and felonious assault are not allied offenses of similar import. Appellant's argument in this regard is without merit.
 {¶ 160} We next consider whether attempted murder and attempted felonious assault are allied offenses of similar import. Again, we note that the two offenses differ in one significant respect. We reiterate that when committing the crime of attempted murder, an offender must engage in conduct that attempts to "cause[s] the death of another," while when committing the offense of attempted felonious assault, an offender must merely engage in conduct that "cause[s] serious physicalharm to another." R.C. 2903.02 (emphasis added); R.C. 2903.11 (emphasis added). An offender can attempt a murder and not engage in conduct that *Page 41 
takes any action towards physically harming another. Conversely, an offender can engage in conduct which seeks to merely cause physical harm to another and not cause the death of another. A person who swings a baseball bat at someone's kneecaps but misses is guilty of attempted felonious assault but not murder. Therefore, we find that attempted murder and attempted felonious assault are not allied offenses of similar import.
 {¶ 161} Appellant next argues within this assignment of error he should not have received multiple punishments for the separate victims in the attempted murder convictions. We disagree.
 {¶ 162} The Supreme Court of Ohio has previously held multiple punishments for separate victims in a single incident does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. In State v. Jones (1985), 18 Ohio St.3d 116, 480 N.E.2d 408, the Supreme Court of Ohio held that multiple punishments for separate deaths in a single automobile accident did not violate the constitutions. Id. at 117. The court reasoned that the language in the vehicular homicide statute, "causing death of another," demonstrated the legislature's intention to permit multiple punishments for each person killed as a result of the defendant's reckless operation of a vehicle.Jones, supra at 117-118. Hence, appellant's argument in this regard is without merit. See, also, State v. Baldwin, Cuyahoga App. No. 83327,2004-Ohio-2850 (in drive-by shooting, the felonious assault charges were of dissimilar import with respect to each person subjected to the *Page 42 
harm.)
 {¶ 163} As in Jones, supra, we find the language in the murder statute, "purposely cause the death of another," demonstrates an intention to allow multiple punishments for each victim. Appellant's argument in this respect is without merit.
 {¶ 164} Appellant also argues that the trial court improperly engaged in judicial fact-finding when it imposed maximum and consecutive sentences after finding that "there was a separate animus as to each and every victim in this case."
 {¶ 165} Since the Supreme Court of Ohio's decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, judicial fact-finding is no longer required before the court could impose a non-minimum, maximum, or consecutive sentence. Id. at paragraphs one and three of syllabus. Accordingly, trial courts now possess "full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing [such sentences]." Id. at paragraph seven of the syllabus; see, also, State v. Mathis, 109 Ohio St.3d 54, 61-62, 2006-Ohio-855,846 N.E.2d 1, paragraph three of the syllabus.
 {¶ 166} When the court was sentencing appellant, it stated in relevant part:
 {¶ 167} "Counts one through four, the Court finds there was a separate animus as to each and every victim in this case, and will run each 18 year sentence consecutive to each other."
 {¶ 168} The court's referral to separate animus was a passing reference and not a factual determination. In this case, the jury found appellant guilty of the *Page 43 
four attempted murder charges. The issue of whether a separate animus is present is a legal issue for the court to determine, not a question for the jury. State v. Kent (1980), 68 Ohio App.2d 151, 154, 428 N.E.2d 453. Accordingly, appellant's argument lacks merit. Appellant's twelfth assignment of error is overruled.
 {¶ 169} Appellant's thirteenth assignment of error states:
 {¶ 170} "Defendant was denied due process of law and subjected to a cruel and unusual punishment when the court sentenced defendant to consecutive sentenced [sic] of ninety-two (92) years."
 {¶ 171} In his thirteenth assignment of error, appellant argues that he was denied due process and subjected to cruel and unusual punishment because the trial court sentenced him to a 92-year prison sentence.
 {¶ 172} The Supreme Court of Ohio in State v. Hairston,2008-Ohio-2338, recently upheld a 134-year prison term imposed upon a defendant, holding that the aggregate term did not constitute cruel and unusual punishment in violation of the Eighth Amendment. In so doing, the court noted:
 {¶ 173} "We have expressly held that trial courts have discretion to impose a prison sentence within the statutory range for the offense.State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. And, in McDougle, we stated that `[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment.'1 Ohio St.2d at 69, 30 O.O.2d 38, 203 N.E.2d 334, citing Martin v. United States
(C.A.9, 1963), *Page 44 317 F.2d 753 (overruled on other grounds, United States v. Bishop (1973),412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941); Pependrea v. UnitedStates (C.A.9, 1960), 275 F.2d 325; and United States v. Rosenberg
(C.A.2, 1952), 195 F.2d 583."
 {¶ 174} In McDougle v. Maxwell (1964), 1 Ohio St.2d 68,203 N.E.2d 334, the Ohio Supreme Court held that punishments which are prohibited by the Eighth Amendment "are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." id. at 69. "Cases in which cruel and unusual punishments have been found, are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person" and "almost unthinkable in a civilized society." Id. at 69-70.
 {¶ 175} Appellant's 92-year sentence falls within the range set forth in R.C. 2929.14. Thus, his sentence cannot be considered cruel and unusual punishment. Moreover, his sentence is not disproportionate to the offense so as to shock the community. Substantial evidence indicates his participation in the shooting which resulted in severe, permanent injuries to the victims. Two police officers testified that they personally witnessed shots being fired from the Chevy, in which appellant admits he was a passenger, to the victim's vehicle. Gunshot residue was discovered not only on the passenger side of the vehicle, but on appellant's hands as well. He was the only passenger in the vehicle to have tested positive for gunshot residue. *Page 45 
Furthermore, Officer Lentz testified that he saw appellant flee the Chevy with a gun in his hand. As a result of the shooting, Christopher Lovelady suffered from permanent blindness in one eye and Kenneth Tolbert is paralyzed on one side of his face.
 {¶ 176} Additionally, we also note that the jury found appellant guilty of attempted felonious assault of a police officer. After following appellant into the field, Officer Lentz testified that more gunshots rang out resulting in him fleeing the field. Officer Keane confirmed that he too heard the gunshots. In light of these circumstances, we find appellant's sentence of 92 years does not constitute cruel or unusual punishment, nor is it disproportionate to the offense.
 {¶ 177} Finally, although appellant contends that his sentence was excessive and disproportionate to other crimes he asserts are more serious, that issue was not raised at the trial court level nor has appellant presented any evidence in the record substantiating his claims. Therefore, he has not preserved the issue for appeal. Accordingly, we decline to address it. His thirteenth assignment of error is overruled.
 {¶ 178} Appellant's fourteenth assignment of error states:
 {¶ 179} "Defendant was denied effective assistance of counsel."
 {¶ 180} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's *Page 46 
performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus. To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie,81 Ohio St.3d 673, 674, 1998-Ohio-343, 693 N.E.2d 267. "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v. Henderson, Cuyahoga App. No. 88185, 2007-Ohio-2372.
 {¶ 181} The Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case.State v. Flors (1987), 38 Ohio App.3d 133, 139, 528 N.E.2d 950, citingKimmelman v. Morrison (1986), 477 U.S. 365, 91 L.Ed.2d 305,106 S.Ct. 2574. The burden is on the defendant to point to evidence in the record supporting suppression of evidence. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Gibson
(1980), 69 Ohio App.2d 91, 95, 430 N.E.2d 954. Moreover, counsel is not required to perform a futile act. State v. Martin (1983),20 Ohio App.3d 172, 174, 485 N.E.2d 717; State v. Lodge, Greene App. No. 2004 CA 43,2005-Ohio-1908; State v. Davis, Butler App. *Page 47 
 {¶ 182} Here, appellant is unable to establish defense counsel's performance was ineffective because he has failed to establish that the warrantless arrest was contrary to law.
 {¶ 183} The Ohio Supreme Court has prescribed that an arrest occurs when there is the following:
 {¶ 184} "(1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." State v. Darrah (1980), 64 Ohio St.2d 22, 26, 412 N.E.2d 1328
(citations omitted).
 {¶ 185} In the case sub judice, the police apparently intended to arrest appellant as they apprehended him, mirandized him, handcuffed him, and placed him in the back of the squad car. Appellant clearly understood he was under arrest. As the actions of the officers constituted an arrest, we now must decipher whether probable cause existed for the arrest.
 {¶ 186} The Supreme Court of Ohio in State v. Elmore,111 Ohio St.3d 515, 521, 2006-Ohio-6207, 857 N.E.2d 547, stated the following:
 {¶ 187} "The warrantless arrest of an individual in a public place upon probable cause does not violate the Fourth Amendment. SeeUnited States v. Watson (1976), 423 U.S. 411, 423-424, 96 S.Ct. 820,46 L.Ed.2d 598; United States v. Santana (1976), 427 U.S. 38, 42,96 S.Ct. 2406, 49 L.Ed.2d 300. Moreover, in *Page 48 
Ohio, warrantless arrests are permitted by statute. R.C. 2935.04
provides: `When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained.' Thus, the question becomes whether there was probable cause for making the arrest.
 {¶ 188} "Probable cause for a warrantless arrest requires that the arresting officer, at the time of the arrest, possess sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed. Gerstein v.Pugh (1975), 420 U.S. 103, 111-112, 95 S.Ct. 854, 43 L.Ed.2d 54;Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. In determining whether probable cause existed, we examine the `totality' of facts and circumstances surrounding the arrest. See State v. Homan
(2000), 89 Ohio St.3d 421, 427, 2000-Ohio-212, 732 N.E.2d 952." *Page 49 
 {¶ 189} In the instant matter, the officers witnessed appellant engage in illegal activity. The record demonstrates Officers Keane and Lentz witnessed gunshots fired from the Chevy towards the Lincoln. Appellant admittedly was a passenger in the vehicle. As he fled from the vehicle during police pursuit, Officer Lentz saw a firearm in his hand. Lentz ran after appellant to a nearby field where Lentz and Keane heard gunshots fired again. Considering the totality of the circumstances, the officers clearly had probable cause to believe appellant was guilty of the offense. Because the officers performed a legal arrest pursuant to the Fourth Amendment and R.C. 2935.04, any challenge to the arrest and the evidence obtained therefrom would have been unavailing. Therefore, defense counsel was not ineffective for failing to file a motion to suppress. Appellant's last assignment of error is not well-taken.
Judgment affirmed in part, reversed in part and remanded.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 50 
ANN DYKE, JUDGE
PATRICIA ANN BLACKMON, P.J., CONCURS
CHRISTINE T. McMONAGLE, J., DISSENTS (SEE ATTACHED OPINION)
[1] In an entry filed on June 14, 2007, the trial court referred to the inducing panic counts as being felonies of the third degree. On July 9, 2007, the court noted the designation as an error and classified the counts as felonies of the fourth degree.